COMMONWEALTH *vs.* WILLIAM MCMURTRY.

Norfolk. April 12, 1985. — August 19, 1985.

Present: KASS, CUTTER, & SMITH, JJ.

*Self-Defense. Imprisonment*, Enforcement of discipline. Practice, Criminal, Instructions to jury. *Correctional Officer. Evidence*, Reputation.

In the context of a judge's entire charge to the jury at the trial of a prison inmate charged with assault and battery on a correction officer, the judge's use of language to the effect that the jury "must find that the evidence in this case raises the issue of self-defense," allegedly shifting the burden of proof to the defendant, created no substantial risk of a miscarriage of justice. [631-632]

At the trial of a prison inmate charged with assault and battery on a correction officer, the judge's instruction to the jury as to limitations on the defendant's right to resist forcibly an unlawful arrest, based on the Supreme Judicial Court's decision in *Commonwealth* v. *Moreira*, 388 Mass. 596, 601-602 (1983), a decision, by its terms, applying to incidents occurring after the date of its issuance, did not, in the circumstances of an incident occurring about a month before the *Moreira* decision, require reversal of the defendant's conviction, especially since the defendant never claimed that the correction officers who sought to place him under restraint lacked lawful grounds to do so. [632]

At the trial of a prison inmate charged with assault and battery on a correction officer arising out of an incident in which four correction officers, constituted as a so called prison "move team," sought to retrieve a plastic tray from the defendant, there was no merit to the contention that the judge erred in excluding evidence of the reputation of the move team for violence, where there was no evidence that the defendant, at the time of the incident, had any knowledge of the reputations of any of the officers comprising the team, and where the excluded testimony would have added nothing of significance to other evidence admitted at the trial. [633]

INDICTMENT found and returned in the Superior Court Department on March 28, 1983.

The case was tried before *Roger J. Donahue*, J.

*Bernard Grossberg* for the defendant.

*Peter W. Agnes, Jr.*, Assistant District Attorney, for the Commonwealth.

KASS, J. Four correction officers, constituted as a "move team," undertook to retrieve a plastic tray from McMurtry, an inmate in Block Ten (a segregation unit for troublesome prisoners) at M.C.I., Cedar Junction. Before they accomplished their mission, McMurtry managed to throttle and injure one of the guards. McMurtry was tried and convicted by a jury of assault and battery on a correction officer. G. L. c. 265, § 13D.

There is no question that the prisoner was obliged to relinquish the food tray and that his refusal to do so was a violation of prison rules. He had refused to return the tray for several days. The tray could be fashioned into a weapon (a shiv) and fragments could be used to jam locks. Move teams deal with prisoners who are likely to be resistant. Members of the move team wear helmets, gas masks, flak vests, and jump suits. The first man in the cell is the "shield man," who carries a concave shield with which he is to corner and pin the prisoner. Two other members of the team are to follow immediately to restrain the prisoner, while a fourth snaps handcuffs or leg irons on the inmate.

Prior to entry into McMurtry's cell the guards once more called on him to give up the tray. He refused. As a first step in the operation that followed, the move team sprayed a chemical agent, "Federal Streamer," into McMurtry's cell. The shield man then moved in, but McMurtry had so covered the cell floor with excrement and mustard that the shield man slithered. McMurtry got behind the shield man and started to choke him. By the time the two restraint men got McMurtry off the shield man, the latter, according to the testimony, "dropped to the floor face down on the feces and the mustard and stuff on the floor," and was in respiratory arrest. This extraordinary episode was recorded on videotape by a crew making a training film. For that purpose, as well as a record of the events, the videotape must have been instructive. It was shown to the jury.

On appeal McMurtry argues errors in jury instructions on self-defense and the right to resist unlawful arrest and an error of wrongful exclusion of evidence about the general reputation of the move team. We affirm.

1. *Jury Instructions.*

a. *Self-defense.* For the first time on appeal the defendant objects to the judge having said to the jury: "[I]f the jury finds an issue of self-defense must be decided by them and the Commonwealth contests that issue, as it has in this case, then the Commonwealth has the burden of proving that it was not self-defense and that burden of proof must go to a point beyond reasonable doubt." A later instruction, in response to a question from the jury, put the point similarly: "[Y]ou the jury must first find that the evidence in this case raises the issue of self-defense." The defendant claims that the "finding" language improperly shifted the burden of proof on self-defense. See, e.g., *Connolly* v. *Commonwealth,* 377 Mass. 527, 533-535 (1979); *Commonwealth* v. *Richards,* 384 Mass. 396, 405 (1981).

It is enough to say that since the defendant did not raise the argument at trial, it is lost on appeal, unless there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Williams,* 378 Mass. 242, 242-243 (1979). *Commonwealth* v. *Loretta,* 386 Mass. 794, 799 (1982). There was none. In the circumstances, i.e., a prison inmate who provokes the authorities to use force, then trumps it with well-prepared violence, all in front of a camera, a theory of self-defense is not overpowering. Moreover, the "finding" language of the instruction was not used in a way that suggested a burden fell upon the defendant to prove that he acted in self-defense. Rather, the judge used the language to remind the jurors that they had first to determine whether self-defense existed as an issue in this case; then they could turn to the particulars of the defendant's claim. Cf. *Commonwealth* v. *Medina,* 380 Mass. 565, 578-579 (1980); *Commonwealth* v. *Doucette,* 391 Mass., 443, 452 (1984). In the context of the instruction as a whole, it was unmistakable that the Commonwealth had the burden of proving beyond a reasonable doubt: (1) that the defendant had not

acted in self-defense; (2) that he had used excessive force; and (3) that there was no provocation which reasonably produced the defendant's response. The judge had added for good measure: "As I said to you before, in all the essential elements of the case, the burden of proof is on the government and that burden never shifts to the defendant." See *Commonwealth* v. *Johnson*, 372 Mass. 185, 192 (1977); *Gibson* v. *Commonwealth*, 377 Mass. 539, 540 (1979); *Commonwealth* v. *Deeran*, 10 Mass. App. Ct. 646, 650 (1980). Compare *Commonwealth* v. *Nieves*, 394 Mass. 355, 361-362 (1985).

b. *Right to resist arrest.* For purposes of allowing the jury to consider whether McMurtry had grounds to resist the correction officers, the judge likened the tray retrieval operation to an arrest. Restraint of an inmate to enforce a prison regulation is not unlike restraint of a person to enforce a criminal statute, and the analogy was apt. Relying on *Commonwealth* v. *Moreira*, 388 Mass. 596, 601-602 (1983), the judge instructed the jury that a person may not resist an arrest, even if reasonably thought to be unlawful, by someone known to be an authorized public officer, unless the officer uses excessive or unnecessary force. The defendant objected that it was error to give the *Moreira* instruction because that decision, by its terms, applied to incidents occurring after the date of its issuance. *Moreira*, at 601.

In a purely literal sense there was an error in the judge's instruction: the McMurtry incident had occurred about a month before the *Moreira* decision. As to the defendant, however, the error was entirely harmless. He had never claimed that the correction officers lacked lawful grounds to place him under restraint. It has long been the rule that a person has no right to resist *lawful* arrest unless the restraining officers used excessive force. See *Powers* v. *Sturtevant*, 199 Mass. 265, 266 (1908); *Julian* v. *Randazzo*, 380 Mass. 391, 396 (1980). The *Moreira* case extended that principle to *unlawful* arrests. What mattered to the defendant was that the question be put to the jury whether the force used by the correction officers was reasonable. If excessive, the inmate might resist. All this was included in the judge's instructions.

2. *Reputation of the Move Team.*

At trial the defendant tried unsuccessfully to introduce evidence of the reputation of the move teams for violence. See *Commonwealth* v. *Tircinski*, 189 Mass. 257, 258 (1905); *Commonwealth* v. *Edmonds*, 365 Mass. 496, 501 (1974); Liacos, Massachusetts Evidence 415 (5th ed. 1981). Of course, McMurtry could have resolved his apprehensions by delivering up the food tray rather than by planned resistance.

In any event, it is a prerequisite of the admission of such evidence that the defendant have knowledge at the time of the act of the character of the person he apprehends may do him harm. *Commonwealth* v. *Rubin*, 318 Mass. 587, 588 (1945). *Commonwealth* v. *Hennessey*, 17 Mass. App. Ct. 160, 167 (1983). There is nothing in the record to indicate he had knowledge of the reputation of the member of the move team whom he hurt, or the reputations of any of the four members on this particular move team. It was within the judge's discretion to exclude prison scuttlebutt about other move teams and move teams generally.

Moreover, the defendant did succeed in introducing evidence about the reasonableness of his apprehension. He was allowed to testify about the threatening appearance and equipment of the move teams and that two officers who were on this particular move team had been in his cell and threatened him (one had said to the defendant, "You are a dead man now") approximately thirty minutes before the incident. That testimony established a basis for the defendant's fear of the move team. The excluded testimony would have added nothing of significance. See *Commonwealth* v. *O'Connell*, 274 Mass. 315, 319 (1931). Compare *Commonwealth* v. *Caldron*, 383 Mass. 86, 93 (1981).

*Judgment affirmed.*