## Commonwealth *vs.* Robert Graham.

No. 03-P-697.

Suffolk. September 15, 2004. - December 7, 2004.

Present: Duffly, Cohen, & Green, JJ.

*Burglary. Attempt. Practice, Criminal,* Instructions to jury. *Evidence,* Prior conviction, Hearsay, Intent, State of mind, Emotional state. *Resisting Arrest. Assault and Battery on Certain Public Officers and Employees. Self-Defense.*

The evidence at the trial of indictments charging the defendant with, inter alia, attempted burglary was sufficient to warrant the jury in finding an intent to steal from the circumstances surrounding the defendant's attempt to break and enter a dwelling house in the night time, and from the conduct and declarations of the defendant, where evidence of the attempt was coupled with evidence that the defendant fled when discovered by police on the fire escape of the building, hid from police, and gave explanations that could be found to be false as to why he was trying to get into the building [645-646]; moreover, the judge properly instructed the jury as to whether the stealing constituted a felony [646-647].

At a criminal trial, the judge did not err in permitting questioning on cross-examination of the defendant about his prior arrest for and convictions of attempted breaking and entering, malicious destruction of property, and assault and battery on police officers by means of a dangerous weapon, where the defendant had testified on direct examination that he had suffered serious injuries in a previous altercation with the police that had made him fearful of police; to the extent that this evidence was prejudicial, the potential for prejudice was minimized by the fact that the judge gave appropriate cautionary instructions, the prosecutor did not mention the prior convictions in closing argument, and the case against the defendant was strong. [647-648]

The judge at a criminal trial did not err in denying the defendant's request to introduce the testimony of a particular witness, where the proffered evidence was relevant only for its corroborative value, and then only on a question indirectly linked to an element of the crime. [648-649]

At the trial of indictments charging the defendant, inter alia, with resisting arrest and three counts of assault and battery on a police officer, the judge erred in not giving a requested instruction to the jury on the issue of self-defense, where the evidence supported a theory of self-defense, and where the judge's instructions likely suggested to the jury, incorrectly, that the defendant had the burden of establishing that the police had used excessive force, that the defendant defended himself with the use of reasonable force,

and that he resisted arrest using only such reasonable force as was necessary to resist excessive force. [651-654]

INDICTMENTS found and returned in the Superior Court Department on December 29, 1999.

The cases were tried before *Robert Malcolm Graham*, J.

*Robert A. O'Meara* for the defendant.

*Timothy M. Pomarole (Dean A. Mazzone*, Assistant District Attorney, with him) for the Commonwealth.

DUFFLY, J. Convicted by a jury of numerous offenses, the defendant's appeal focuses on his convictions of attempted burglary, G. L. c. 274, § 6; resisting arrest, G. L. c. 268, § 32B; and three counts of assault and battery on a police officer, G. L. c. 265, § 13D.[1,2] We affirm the conviction of attempted burglary, as to which the defendant makes the following claims: (1) the judge erred in denying the defendant's motions for a required finding of not guilty because the evidence from which intent could be inferred was insufficient to convict him of attempted burglary; (2) the judge instructed the jury incorrectly on the requisite intent to prove attempted burglary; (3) evidence of his prior convictions of similar crimes was erroneously admitted; and (4) testimony of a defense witness was wrongly precluded.

We agree that the judge's failure to give a requested self-defense instruction was an error that prejudiced the defendant and requires reversal of the convictions of resisting arrest and assault and battery on a police officer.

1. *Attempted burglary.* We begin with a summary of the facts the jury could have found, drawn from the Commonwealth's case, in order to address the defendant's claims with respect to his conviction for attempted burglary, leaving for later discussion evidence relevant to his other claims.

---

[1]The defendant makes no claims directed to his conviction of possession of a Class B controlled substance, G. L. c. 94C, § 34, or his conviction of attempted larceny of a firearm from Officer Thomas Antonino, G. L. c. 274, § 6.

[2]The defendant was acquitted of burglary and assaulting a lawful occupant (at 13 Hereford Street), G. L. c. 266, § 14; attempted larceny of a firearm from Officer Robert Charbonnier, G. L. c. 274, § 6; and larceny from a building (13 Hereford Street), G. L. c. 266, § 20.

In the early morning hours of September 12, 1999, Martyn Botsfield, a resident of an apartment building located at 363 Marlborough Street in Boston, was awakened by the sound of his apartment buzzer. Once awake, he could hear other buzzers ringing in the building. When his apartment buzzer rang a second time and he asked the person to identify himself, he was told, "Let me in." After Botsfield refused entry, he heard the person walk down the stairs. Twenty minutes later, when Botsfield heard someone creeping up the fire escape of his building, he called the police.

Officers Robert Charbonnier and Patrick Foley of the Boston police department responded to this call. Officer Charbonnier left his cruiser and approached the building, shining his flashlight onto the fire escape. There he observed a black male, later identified as the defendant, in a kneeling position on the fire escape, pulling on a window grate with his hands. When Officer Charbonnier ordered him to come down, the defendant ran up the fire escape and onto the roof, whereupon the officer lost sight of him. The officers gained access to the roof and were joined by several other uniformed police officers who assisted in a rooftop search of 363 Marlborough Street. The defendant was not located there, but the officers noticed that a skylight on the adjacent building, a residence with an address of 13 Hereford Street, was ajar. Officers Charbonnier and Foley entered that building through the skylight and identified themselves to the building's owner, Adelbert Spitzer. The officers conducted a search of the dwelling but did not find the suspect. Spitzer then made his own search before allowing his wife and daughters to return to their bedrooms. In one daughter's bedroom he observed that toy bins typically kept underneath the bed were sticking out. He pulled the toy bins aside and looked under the bed, where he saw the back of an individual lying with his face against the wall. Spitzer alerted police, who were still outside, and several officers proceeded to the bedroom. Officer Thomas Antonino entered first, with his service revolver drawn. Officer Foley lifted the mattress from the bed and saw the defendant curled up in a fetal position against the wall. The defendant was ordered to come out from under the bed.

All of the officers who testified to the events that followed made essentially identical statements, to the effect that the defendant lunged from the bed and that there ensued a violent struggle during which the defendant kneed and elbowed the officers. Attempts to spray the defendant with mace did not subdue him, and Officer Charbonnier, who weighed 220 pounds, held onto the defendant, but lost control of him. The officers then tackled the defendant in the hallway outside the bedroom. Ultimately, it took several police officers to subdue the defendant and handcuff him. During a routine pat-down search of the now-handcuffed defendant, police found six "hits" of "crack" cocaine in the defendant's socks, and several empty plastic baggies in the landing area.

a. *Sufficiency of the evidence.* The statutory basis for the conviction of attempted burglary is two-fold. The crime of "attempt[ing] to commit a crime" is set forth in G. L. c. 274, § 6, and requires that the defendant "engage[] in some overt act" toward commission of a crime with the intent to commit that crime. *Commonwealth* v. *Burns*, 8 Mass. App. Ct. 194, 196 (1979). The underlying crime here was "break[ing] and enter[ing] a dwelling house in the night time, with intent to commit a felony." G. L. c. 266, § 14. "[T]he Commonwealth must prove not only a breaking and entering but that it was done 'with intent to commit a felony.' " *Commonwealth* v. *Lewis*, 346 Mass. 373, 377 (1963), cert. denied, 376 U.S. 933 (1964), quoting from G. L. c. 266, § 18. The indictment is silent as to the nature of the felony, but the trial judge instructed the jury that "the felony that the Commonwealth is alleging in this indictment is that the defendant intended to commit a larceny in the dwelling." See *Commonwealth* v. *Willard*, 53 Mass. App. Ct. 650, 653 (2002).

The evidence of the defendant's attempt to gain entry to the building in the middle of the night by ringing buzzers, his subsequent lurking on a fire escape outside of an apartment, and his pulling on a window grate was sufficient to establish the first two elements of the offense: that the defendant harbored the intent to break and enter the building at 363 Marlborough Street, in the nighttime. See G. L. c. 266, § 14; *Commonwealth* v. *Anderson*, 396 Mass. 306, 311 (1985). The defendant

concedes that he was attempting to break and enter the dwelling but claims that he did so in order to hide from police, not to steal, and he argues that this evidence was insufficient to establish his intent to steal. Additional evidence of the defendant's intent, beyond the attempted break and entry itself, however, supported the inference that the defendant harbored the intent to steal once inside the building.

Here, the attempt was made in the night time; when coupled with the additional evidence that the defendant fled when discovered by police on the fire escape, hid from police, and gave explanations that could be found to be false as to why he was trying to get into the building, the evidence was sufficient to warrant a finding that he intended to steal.[3] See *Commonwealth* v. *Eppich*, 342 Mass. 487, 492 (1961) (false statements as to presence in neighborhood could be considered with other evidence "as showing a consciousness of guilt on the part of the defendant of the crime with which he is charged"). See also *Commonwealth* v. *Ronchetti*, 333 Mass. 78, 81-82 (1955); *Commonwealth* v. *Maia*, 429 Mass. 585, 587-588 (1999).

Though not required to do so, the jury were warranted in finding an intent to steal "from the circumstances attending the act, and from the conduct and declarations of the defendant." *Commonwealth* v. *Lewis*, 346 Mass. at 378, quoting from *Commonwealth* v. *Shedd*, 140 Mass. 451, 453 (1886).[4]

b. *Larceny instruction.* Relying on G. L. c. 266, § 30 (larceny is a felony if the value of property stolen exceeds $250), the

---

[3]The defendant was acquitted of burglary and larceny at 13 Hereford Street. We therefore do not consider the Commonwealth's evidence submitted to support its claim that the defendant stole a pair of nail scissors from 13 Hereford Street.

[4]In *Shedd*, which also involved a conviction for the attempted break and entry of a dwelling in the night time with the intent to commit a felony, a police officer had observed the defendant near a dwelling (the windows of which were later found to be open, when previously they had been shut) and chased him when he fled; the officer lost sight of the defendant when he ran through a yard and into hollyhocks; using a lantern, the officer found the defendant lying on the ground, apparently asleep; when questioned, the defendant made contradictory and false statements about his name and residence. The court concluded that "the jury might well have inferred, from the circumstances attending the act, and from the conduct and declarations of the defendant, that the act was done for the purpose of stealing from the building." *Commonwealth* v. *Shedd, supra* at 453.

defendant argues that the jury should have been instructed that they had to find beyond a reasonable doubt that the property that the defendant intended to steal had a value in excess of $250. The instruction was not required. "[L]arceny in a building is a felony regardless of the value of the items stolen." *Commonwealth* v. *Cruz*, 430 Mass. 182, 188 (1999). See *Commonwealth* v. *Lewis*, 346 Mass. at 378 ("If the jury believed that the defendant entered the . . . home to steal, they were not required to find that he intended to limit his stealing to property under [the statutory minimum] in value").

In any event, to determine whether the stealing in this case constituted a felony, the relevant statute is not G. L. c. 266, § 30, but G. L. c. 266, § 20, which provides: "Whoever steals in a building, ship, vessel or railroad car shall be punished by imprisonment in the state prison for not more than five years or by a fine of not more than five hundred dollars or by imprisonment in jail for not more than two years." As defined by G. L. c. 274, § 1, "[a] crime punishable by . . . imprisonment in the state prison is a felony." Thus, "[t]here [is] no need to prove the value of the [stolen item] as larceny from a building is a felony itself without regard to the value of the stolen property." *Commonwealth* v. *Lattimore*, 6 Mass. App. Ct. 873 (1978). See *Commonwealth* v. *Ronchetti*, 333 Mass. at 82 ("Larceny in a building is a felony"); *Commonwealth* v. *Willard*, 53 Mass. App. Ct. at 655-656 (same). Compare *Commonwealth* v. *Hill*, 57 Mass. App. Ct. 240, 248 (2003) (whether general larceny is felony or misdemeanor depends on value of items taken). The instruction was proper.

c. *Evidence of prior conviction.* During cross-examination of the defendant, the trial judge permitted questioning about the defendant's prior arrest for and convictions of attempted breaking and entering, malicious destruction of property, and assault and battery on police officers by means of a dangerous weapon.[5] The defendant had testified on direct examination that he suffered serious injuries during a 1998 altercation with the police

---

[5]The parties do not argue that the basis for admission of the evidence of the prior convictions was to impeach the defendant, and the Commonwealth makes no claim on appeal that it was admissible as such under G. L. c. 233, § 21.

that made him fearful of police, and that it was this fear of being assaulted by police that caused him to attempt to gain entry into the apartment building.

Prior convictions similar to the crime charged are often deemed inadmissible because the danger of unfair prejudice outweighs the probative value of the evidence. See *Commonwealth* v. *Guilfoyle*, 396 Mass. 1003, 1004 (1985). However, "[w]here the defendant takes the stand and opens the subject on direct examination, questions relating to other crimes and bad acts (otherwise inadmissible) may be permissible within the proper scope of cross-examination." Liacos, Brodin, & Avery, Massachusetts Evidence § 4.4.6, at 167 (7th ed. 1999). See *Commonwealth* v. *Key*, 381 Mass. 19, 28-29 (1980). Here, the defendant opened the door to the admission of the evidence by testifying on direct examination to his altercation with the police in 1998. It was within the judge's broad discretion to permit the prosecutor to cross-examine the defendant regarding the circumstances surrounding the incident, which included his convictions related to the altercation.

To the extent that this evidence was prejudicial, or that the conviction of breaking and entering was not necessary to provide context for the 1998 incident as testified to by the defendant, we observe that any potential for unfair prejudice was minimized by the fact that the judge gave appropriate cautionary instructions; the prosecutor did not mention the prior convictions in closing argument; and the case against the defendant on the attempted breaking and entering charge was strong. In these circumstances, any error in permitting the inquiry was rendered harmless. See *Commonwealth* v. *Smith*, 26 Mass. App. Ct. 673, 678 (1988); *Commonwealth* v. *Sholley*, 48 Mass. App. Ct. 495, 502, *S.C.*, 432 Mass. 721 (2000), cert. denied, 532 U.S. 980 (2001).

d. *Precluded testimony of defense witness.* The defendant's request to introduce the testimony of his pastor was denied on hearsay grounds. Defense counsel's offer of proof was that during conversations with his pastor that took place between May, 1998, and September, 1999, the defendant expressed his grave fear of the police; defense counsel argued that "our sole purpose for putting up [the pastor] is to prove [the defendant's] state of mind, mental state and intent on September 12, 1999."

The defendant claims that he had a right, under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, to present this witness. Although the excluded evidence was admissible as an exception to the hearsay rule, see Liacos, Brodin, & Avery, Massachusetts Evidence § 8:15, at 549 (7th ed. 1999), we may sustain the judge's ruling on other grounds. "The right to call witnesses and present a defense under the Sixth Amendment and art. 12 is not absolute," *Commonwealth* v. *Carroll*, 439 Mass. 547, 552 (2003), and a trial judge may in the exercise of discretion exclude witnesses whose testimony is cumulative. *Id.* at 552-553.

The proffered evidence was relevant only for its corroborative value, and then only on a question indirectly linked to an element of the crime. The defendant had himself testified to his fear of police and the reasons for this fear, and hospital records admitted in evidence corroborated his testimony as to the events of 1998 and established that he had suffered severe injuries (including a skull fracture, internal bleeding, broken teeth, and various other fractures, lacerations, and abrasions) that required a lengthy hospitalization. The jury could easily have believed the defendant's claim that he held a generalized fear of police but disbelieved his testimony that it was that fear, rather than a larcenous objective, that led him to attempt to gain entry to the building. There was no evidence other than the defendant's own testimony to support the defendant's more directly exculpatory claim that the sight of a police cruiser led him to ring buzzers in an attempt to gain entry to 363 Marlborough Street. Cf. *Commonwealth* v. *Elliot*, 393 Mass. 824, 831-832 (1985) (discussing circumstances in which possible error harmless where excluded testimony is cumulative, and citing cases).

2. *Resisting arrest and assault and battery on a police officer.* The defendant claims that the judge erred in denying his requested self-defense instruction with respect to the three counts of assault and battery on a police officer and the count of resisting arrest.[6] We agree and reverse the judgments as to those convictions.

---

[6]The defendant appealed from all of the convictions. Although his argument focuses primarily on the self-defense instruction as it relates to the convictions

The defendant testified that due to the severe injuries he had sustained at the hands of police in May, 1998, he was afraid in September, 1999, when he thought police officers were following him, panicked when he saw police approach, and attempted to evade them by hiding under the bed in a bedroom located at 13 Hereford Street. He was discovered by police officers who lifted the bed; one pointed a gun at him, and two others picked him up. Officer Charbonnier grabbed him from behind and was choking him with his flashlight, so that he could barely breathe, while another officer, possibly Officer Foley, hit him so hard in the face his front teeth were knocked out. He also was being kicked in the ribs to get him down, and when he was on the floor an officer had a foot on his head, and smashed his head into the floor. Throughout this time, the defendant thought he might be killed by the police. He testified that he "tried to get out of the way of the punches," and that with one free hand, he was "[b]locking punches, kicks and just trying to — I was, you know, just trying to protect myself, basically." The beating by police abated after two more officers arrived on the scene. In addition to having two teeth knocked out, the defendant suffered a deep laceration to his lip, and numerous bruises and abrasions. He lost consciousness and was transported to the hospital, where he remained for three days.

Other evidence indicated there was considerable blood in the bedroom as well as at locations outside of the bedroom. A reasonable inference based on the evidence is that the blood was from the defendant's injuries. Medical evidence was to the effect that the defendant lost consciousness due to blunt trauma to the skull which precipitated a seizure.

of assault and battery on a police officer, he also argues, relying on *Commonwealth* v. *McMurtry*, 20 Mass. App. Ct. 629, 632 (1985), that "[i]f the police officers' force was excessive, the defendant had the lawful right to resist." We have said that when excessive force is used by an arresting officer and the defendant resists, "disposition of the case depends on the application of the rules pertaining to self-defense." *Commonwealth* v. *Moreira*, 388 Mass. 596, 601 (1983). See *Commonwealth* v. *Williams*, 53 Mass. App. Ct. 719, 723 n.1 (2002) (concepts of excessive force and self-defense are closely related). Thus, at least where the defense claim is that permissible force was used to defend against the excessive force of police in connection with an arrest, the claims that the defendant permissibly resisted arrest and that he engaged in self-defense are collapsed and the arguments in support of these claims are identical.

a. *Standard of review.* The defendant's trial attorney made a timely request that the judge instruct the jury on the issue of self-defense, noted her objection when the request was denied, and voiced her objection again at the conclusion of the jury charge. We therefore review to determine whether the failure to instruct was error and, if it was, whether the error was prejudicial. The prejudicial error standard requires that the Commonwealth show "with fair assurance" that the error did not "substantially sway[]" the outcome of the case. *Commonwealth* v. *Rosado*, 428 Mass. 76, 79 (1998), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

b. *Self-defense instruction.* A defendant is entitled to a self-defense instruction if, taking all reasonable inferences in favor of the defendant, "the prerequisites of self-defense were present." *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998). See *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). "In determining whether sufficient evidence of self-defense exists, all reasonable inferences should be resolved in favor of the defendant, and, no matter how incredible his testimony, that testimony must be treated as true." *Commonwealth* v. *Pike*, *supra*.

Self-defense is reasonably invoked at a criminal trial only if there was a threat of harm to the person protected. *Commonwealth* v. *Monico*, 373 Mass. 298, 303 (1977). The standard for determining whether a defendant's actions were employed reasonably in self-defense depends on the level of force he used on his victim as well as the surrounding circumstances. See *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 690 (1976); *Commonwealth* v. *Pike*, 428 Mass. at 395.

If there is sufficient evidence to raise the issue of self-defense, the burden then shifts to the Commonwealth to show beyond a reasonable doubt that the defendant did not act in self-defense. *Commonwealth* v. *Harrington*, 379 Mass. at 453-454. *Commonwealth* v. *Albert*, 391 Mass. 853, 857-858 & n.1 (1984). Treating the defendant's testimony as truthful, and drawing all reasonable inferences in favor of the defendant from all of the evidence, we conclude that the evidence supported a theory of self-defense.

The Commonwealth correctly points out that in instances

involving either lawful or unlawful arrest by law enforcement officers, a defendant is not privileged to use force to resist arrest in the absence of excessive force by the arresting officer. See *Commonwealth* v. *Moreira*, 388 Mass. 596, 601 (1983). In *Moreira*, which involved a conviction for resisting arrest, the court said that "where the officer uses excessive or unnecessary force to subdue the arrestee, regardless of whether the arrest is lawful or unlawful, the arrestee may defend himself by employing such force as reasonably appears to be necessary." *Ibid.* The question whether the police officer used excessive force and the related question, whether the defendant used reasonable force to defend himself, are questions of fact for a jury to decide, with proper instruction from the trial judge. *Id.* at 602.

We agree with the defendant that the judge's instructions in this case "implicitly placed the burden on the defendant to prove the existence of facts and circumstances justifying his use of force in self-defense." *Commonwealth* v. *Harrington*, 379 Mass. at 454. This is so, notwithstanding the fact that the judge, who refused to give the requested self-defense instruction, did instruct on excessive force with respect to indictments for assault and battery on a police officer and resisting arrest.

Prefacing his instruction as to assault and battery on a police officer, the trial judge said that "the Commonwealth must [convince] you, the jury, beyond a reasonable doubt of the following six elements." He then described the six elements, making no reference to the issue of self-defense or excessive force. Concluding instructions as to the six elements, the judge then said:

> "Now, in the absence of the use of excessive or unnecessary force by a law enforcement officer, a person may not use force to resist an arrest or other law enforcement action by one whom he or she knows or has good reason to believe is an authorized law enforcement officer engaged in the performance of his or her duty, whether the arrest is lawful or unlawful. However, if a law enforcement officer uses excessive or unnecessary force to make an arrest, the person who is being arrested may defend himself by using such force as reasonably appears to be necessary in light of all the circumstances, whether the arrest is lawful or

> unlawful. Once a person being arrested knows or reason-
> ably should know that if he stops using force, the officer
> will stop using force[,] [a] person being arrested is required
> to stop using force. That's for you to determine whether
> the officers in this case used excessive force, and whether
> the defendant being arrested used reasonable force to resist
> excessive force."

The judge similarly instructed the jury after informing them that
the Commonwealth had to prove beyond a reasonable doubt
elements comprising the crime of resisting arrest, again without
specific reference to which party had the burden with respect to
the use of excessive force.

The instruction did not alert the jury that the Commonwealth
had the burden of proof on the issue whether the police had
used excessive or unnecessary force. Viewing the charge as a
whole, we think the instruction likely suggested to the jury,
incorrectly, that the defendant had the burden of establishing
that the police had used excessive force; that the defendant
defended himself with the use of reasonable force; and that he
resisted arrest using only such reasonable force as was neces-
sary to resist excessive force.

At least in circumstances where the evidence supports a claim
of excessive or unnecessary force by police and the concomitant
right to self-defense, we think the judge must also instruct that
the Commonwealth must prove beyond a reasonable doubt that
the police did not engage in excessive force, as well as that the
defendant did not act in self-defense. Compare *Commonwealth
v. Gomes*, 59 Mass. App. Ct. 332, 340-341 (2003) (no right to
excessive force and self-defense instruction where issue is
unlawful entry by police; right is limited to instances where
police use excessive or unnecessary force upon the person). In
*Commonwealth* v. *McMurtry*, 20 Mass. App. Ct. 629 (1985),
which involved a self-defense claim against correction officers,
we said that in circumstances involving lawful or unlawful ar-
rest where evidence of self-defense is also present, "[i]n the
context of the instruction as a whole, it [must be] unmistakable
that the Commonwealth had the burden of proving beyond a
reasonable doubt: (1) that the defendant had not acted in self-
defense; (2) that he had used excessive force; and (3) that there

was no provocation which reasonably produced the defendant's response." *Id.* at 631-632. The lack of reasonable provocation in this context means that police did not act with excessive or unnecessary force. We would refine the instruction in cases where a defendant claims he resisted arrest against the excessive force of arresting officers and acted in self-defense (in response to a related complaint of assault and battery on a police officer). In such cases, the jury should also be instructed that the Commonwealth bears the burden of proving beyond a reasonable doubt that the arresting officers did not use excessive or unnecessary force in making the arrest.[7]

The judgments of conviction of attempted burglary, possession of cocaine, and attempted larceny of a firearm are affirmed. The judgments of conviction of assault and battery on a police officer and resisting arrest are reversed, and those verdicts are set aside.

*So ordered.*

---

[7]The gist of the instruction would provide as follows: if there is evidence of excessive or unnecessary force by police in making an arrest, the Commonwealth must prove beyond a reasonable doubt (1) that the arresting officer did not use excessive or unnecessary force in making the arrest. If the Commonwealth satisfies this burden, then the defendant has no right to engage in self-defense. If the Commonwealth fails to prove that excessive or unnecessary force was not used by police, and there is evidence of self-defense, then the Commonwealth must prove beyond a reasonable doubt (2) that the defendant did not act in self-defense, or (3) that force used by the defendant in self-defense was unreasonable or excessive in the circumstances. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966); *Commonwealth* v. *Rodriguez*, 370 Mass. at 692 n.10.