9OTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11663


COMMONWEALTH  vs.  JEFFREY ASHER.



Hampden.       February 4, 2015. - June 9, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
                  & Hines, JJ.


Assault and Battery by Means of a Dangerous Weapon.  Assault and
     Battery.  Police Officer.  Threshold Police Inquiry.  Self-
     Defense.  Evidence, Self-defense.  Defense of
     Others.  Practice, Criminal, Instructions to jury.



     Complaint received and sworn to in the Holyoke Division of
the District Court Department on October 14, 2010.

     The case was tried before Maureen E. Walsh, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Andrew J. Gambaccini for the defendant.
     Elizabeth Dunphy Farris, Assistant District Attorney
(Katherine E. McMahon, Assistant District Attorney, with her)
for the Commonwealth.


     BOTSFORD, J.  This case concerns the beating of an unarmed

civilian by the defendant Jeffrey Asher, a police officer who

responded to another officer's request for assistance with a

traffic stop in Springfield.  The defendant was charged with assault and battery by means of a dangerous weapon in violation of G. L. c. 265, § 15A (b), and assault and battery in violation of G. L. c. 265, § 13A (a).  At trial, the defendant contended, and presented evidence seeking to show, that the beating was justified based on the need for self-defense and defense of others present.  The jury found him guilty of both charges.  We affirm the convictions.

Background.  1.  Facts.  Based on the evidence presented at trial, the jury could have found the following.  On the evening of November 27, 2009, Officer Michael Sedergren and Lieutenant John Bobianski of the Springfield police department were on patrol in a cruiser when they observed a black Honda Civic automobile dragging its muffler and causing sparks to fly behind it.  The officers stopped the vehicle, and Bobianski spoke to the driver, Malika Barnett.  While Bobianski was speaking to Barnett, Sedergren observed Barnett's companion, Melvin Jones, who was the sole passenger in the vehicle (and the victim in this case), slide toward the floor in the right front passenger's seat and stuff something in his waistband.  Concerned that the victim could be hiding a weapon or other contraband, Sedergren requested assistance over the police radio from Officer Theodore Truoiolo and the defendant, who were together on patrol that night in a separate vehicle.

Once Truoiolo and the defendant arrived, all four officers approached the Honda, with two officers on each side of the vehicle.[1] Truoiolo and Sedergren went to the passenger's side and asked the victim to step out of the vehicle so that they could conduct a patfrisk of him.  The victim complied.  At the officers' instruction, the victim moved to the rear of the vehicle and placed his hands on the trunk.  Truoiolo then began patting the victim's outer garments to check for weapons.  When Truoiolo reached the victim's front right pants pocket, Truoiolo felt a hard object no bigger than his palm.[2]  Truoiolo squeezed the object and yanked the victim toward himself; as he did so, the victim threw his elbow and forearm into Truoiolo's chest and tried to run away.

Sedergren caught the victim around the neck about five feet from the vehicle, but the victim continued to try to run, and the two men ended up against the side of the hood of the second police cruiser.  Truoiolo then grabbed hold of the victim's collar and right shoulder, while Sedergren had the victim in a "choke hold type maneuver" and was on top of the victim's back. At this point, the victim was bent forward over the hood of the

[1] The victim in this case was a black male.  All four officers involved in the incident were white males.

[2] On cross-examination, Officer Theodore Truoiolo admitted that the object in the victim's pants pocket could not have been a gun, and that Truoiolo never indicated to the other officers that the victim might be armed.

police cruiser, with his head facing the windshield and his legs spread apart. The defendant, having seen the victim try to run, went over to the cruiser where the victim was lying spread eagle. The defendant was unable to see the victim's hands, but in response to a statement of Sedergren's, the defendant began to hit the victim repeatedly around his head with a flashlight.[3] Although not all of the blows hit the victim's head, the defendant swung the flashlight at the victim fourteen or more times. At least three strikes made contact with the victim's head and upper body.

The victim continued to move after the first strikes to his head. The officers were shouting commands such as, "don't move" and, "give us your hands," but they did not state that the victim was under arrest. Eventually, Truoiolo cuffed the victim's right hand but could not reach the victim's left hand because of where Sedergren was positioned. The defendant, realizing that many of his blows were hitting the hood of the cruiser rather than the victim's upper body, moved down and

---

[3] The exact words that Officer Michael Sedergren used were somewhat in dispute. Sedergren testified that he said, "He's got my fucking gun, smash him"; the defendant testified that Sedergren said, "He's got my gun, hit him, hit him." However, the jury also heard that the defendant's written report of the incident, filed the day after it occurred, did not quote either statement, but simply said that Sedergren informed the other officers that he believed the victim was trying to grab his gun. In a bystander's video recording of the event, introduced at trial and discussed infra, the words "smash him in the knees" are audible, but no reference to a gun can be heard.

delivered three hard blows with the flashlight to the victim's upper leg. Then, in response to another statement from Sedergren, the defendant hit the victim behind his left knee.[4] Following that blow, the victim fell to the ground with the officers on top of him. The defendant continued to hit the victim as he was lying still on the ground, this time around the victim's upper body and his feet. Eventually, the officers rolled the victim to the side while he lay on the ground and finished handcuffing him, and then Truoiolo reached into the victim's pocket and pulled out the hard object that he had felt earlier, a small bag that was determined to contain "crack" cocaine and marijuana. The victim had no weapons on his person, and no weapons were found in the vehicle.

The victim was taken by ambulance to Baystate Medical Center. The right side of his face was deformed from swelling and bruising, and he suffered fractures of his orbital socket and nose. The victim was also diagnosed with a choroidal rupture, an eye injury resulting from blunt force trauma to the head and causing loss of vision in his right eye. At the time

---

[4] Sedergren testified that he called for the defendant to strike the victim again after Sedergren heard Truoiolo say that the victim was "going for his waist." However, as previously noted, Truoiolo knew that the victim did not have a gun in his waistband, and Truoiolo gave no indication to the other officers following the patfrisk that the victim might be armed. Truoiolo admitted on cross-examination that any possible threat of deadly force against the officers was neutralized by the time that Truoiolo handcuffed the victim's right hand.

of trial, in February, 2012, the victim continued to experience vision loss.

Two persons in a house across the street from where the officers stopped the vehicle noticed the incident developing and recorded much of it on a video camera.  The recording, which includes both audio and video, was admitted as an exhibit at trial.

2.  Procedural history.  On October 14, 2010, a complaint issued from the Holyoke Division of the District Court Department, charging the defendant with assault and battery by means of a dangerous weapon and assault and battery.  Several months later, the defendant filed a notice stating that he would raise as defenses (1) self-defense, (2) defense of another, and (3) "[d]efense of a law enforcement officer's right to use force reasonably necessary to effect an arrest, overcome physical resistance and/or prevent escape."  See Mass. R. Crim. P. 14 (b) (3), as appearing in 442 Mass. 1518 (2004).  Thereafter, approximately three months before trial, the defendant filed an expert witness report of Dr. Frank Gallo, director of the master of science in policing program at Western New England University, that the defendant claimed supported a conclusion that the defendant's use of force against the victim was

reasonable.[5]  The Commonwealth responded to the notice of
defenses and to the expert witness report by filing a motion in
limine to exclude any defense based on the reasonable force
necessary to effect an arrest.[6]  In response, in two subsequent
pretrial hearings regarding Gallo's proposed testimony, the
defendant's trial counsel stated repeatedly that reasonable
force to effect an arrest was not the legal theory on which the
defendant was relying and on which Gallo's testimony would be
based.  Rather, counsel asserted that the defendant's theory of
the case, reflected in Gallo's testimony (see note 5, supra),

---

[5] Dr. Frank Gallo's report is not part of the record on
appeal.  However, Gallo testified in a pretrial voir dire
hearing that he had concluded the defendant's use of force was
"objectively reasonable," given that the defendant was presented
with an individual who had resisted a Terry-type stop and then
tried to disarm an officer.  See Terry v. Ohio, 392 U.S. 1, 27
(1968).

[6] The Commonwealth's argument for the exclusion of this
defense was essentially that the defendant used deadly force
against the victim, and that such force is authorized for the
purpose of effecting an arrest only when the arrest is for a
felony and the crime for which the arrest is made involved
conduct including the use or threatened use of force, or there
is a substantial risk that the person to be arrested will cause
death or serious bodily harm if he or she remains at large.  See
Julian v. Randazzo, 380 Mass. 391, 396 & n.1 (1980) (civil suit
against police officers; jury properly charged regarding limits
on officer's use of deadly force in making arrest in accordance
with Model Code of Pre-Arraignment Procedure § 120.7 [1975]);
Commonwealth v. Klein, 372 Mass. 823, 829-830 (1977) (similar
limitations applied in criminal case against civilian who used
deadly force in citizen's arrest; jury properly charged in
accordance with Model Penal Code § 3.07).  The Commonwealth
reiterates this argument on appeal.  However, because of the
manner in which we resolve this case, we need not address the
claim.

was that the defendant used force to effect a <u>Terry</u>-type stop and a patfrisk of the victim, see <u>Terry</u> v. <u>Ohio</u>, 392 U.S. 1, 27 (1968), and that, ultimately, the force used was reasonably necessary for self-defense and defense of others, and also based on a police officer's training to escalate the use of force in response to a deadly threat, such as a suspect obtaining an officer's gun.[7]  The Commonwealth indicated that if the defendant was not asserting that he used reasonable force to effect an arrest, then the Commonwealth's motion in limine to exclude evidence of this defense was moot.  The trial judge does not appear to have ruled on the motion in limine to exclude, but she did rule preliminarily that Gallo would be allowed to testify at trial.

The defendant was tried before a jury in February, 2012. Despite the trial judge's preliminary ruling concerning Gallo, the defendant did not call Gallo as a trial witness.  At the

---

[7] For example, at the first of the two pretrial hearings, on November 25, 2011, the defendant's trial counsel stated, "[Melvin Jones is] not under arrest.  This victim is not [under arrest].  This reasonable force to effect an arrest, that's not my theory.  I don't know where that came from.  I apologize for that.  But from the outset this is a threshold inquiry, a pat down frisk, and force is escalated to the point where it's the defense argument that deadly force should be used in response to the testimony, '[h]e's going for my gun.'"  At the second pretrial hearing, on December 6, 2011, trial counsel reiterated this position and responded affirmatively when the judge asked for confirmation that in the defense's view, this case had nothing to do with resisting arrest and was all about "the alternative theory of self-defense or defense of others."

close of the evidence, the defendant submitted a request for jury instructions that included repeated reference to the defendant's status as a police officer, to a police officer's right to use force in making an arrest, and to the fact that a person who is being arrested by a police officer may not use force to resist arrest. The defendant also proposed instructions on self-defense and defense of another that mirrored in most respects the District Court's model jury instructions on these defenses, and that included the duty to exhaust all other options, including retreat, before resorting to force. See Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court (2009), at 1-5, 17 (Instruction 9.260). In connection with each of the defendant's proposed instructions, including the instruction on self-defense, the defendant sought a statement regarding his status as a police officer.

At the charge conference, the judge indicated initially that she would instruct the jury on the definition of arrest and on police privilege in some form, although not using the defendant's proposed language. The judge later presented both counsel with a proposed instruction stating that "[b]ecause of the nature of the job, a police officer is permitted to use force in carrying out his official duties if such force is necessary and reasonable," and that a civilian who is arrested

by a police officer must submit to the arrest, but a police officer may not use "excessive or unnecessary force" to make an arrest.[8] The defendant indicated his satisfaction with this instruction. The Commonwealth, however, objected to it on the grounds, among others, that it was essentially an instruction on resisting arrest, a defense the defendant had earlier eschewed. After further discussion with counsel, the judge determined that the planned instruction was confusing and misstated the law, and that, therefore, the instruction would not be given; the defendant objected. The judge's instructions to the jury ultimately included self-defense and defense of another, but did not reference the defendant's status as a police officer in connection with those defenses or otherwise.

The jury found the defendant guilty of both charges. The defendant timely appealed. We transferred the case from the Appeals Court on our own motion.

Discussion. On appeal, the defendant primarily challenges the trial judge's decision not to give the jury the instruction she had proposed on police privilege and resisting arrest, which had the effect of eliminating entirely from her jury

---

[8] The judge's proposed instruction was a somewhat modified version of the District Court's model jury instruction on police privilege and resisting arrest. See Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court (2009). The full text of the proposed instruction is included at note 10, infra.

instructions any reference to a police officer's ability to use reasonable force in connection with official duties. This issue was exacerbated, the defendant argues, by the judge's instructions on self-defense, which included reference to the duty to retreat -- a requirement that in the defendant's view is inappropriate when the person asserting the defense is a police officer. At trial, the defendant's actual objection to the jury instructions before and after the jury charge specifically focused on the judge's decision not to give her proposed instruction on police privilege and resisting arrest. Nevertheless, because the defendant's status as a police officer was clearly a central issue throughout the trial and a focal point of the defense,[9] on appeal, we treat the defendant's challenge to the judge's instructions generally as preserved. We therefore review the judge's instructions for prejudicial error. See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005). In doing so, we conclude that the judge's instructions, insofar as they contained no reference to the defendant's status as a police officer and included the duty to retreat in the explanation of self-defense, were flawed. We further conclude, however, that the errors were not prejudicial when considered in

---

[9] As previously noted, the defendant's proposed jury instructions included numerous references to the defendant's status as a police officer. In addition, Sedergren, Truoiolo, and the defendant each testified regarding his training on the appropriate use of force in conducting his duties.

the context of the evidence in the case and the instructions as a whole.

We consider first the judge's decision not to give her proposed police privilege and resisting arrest instruction.[10] This decision was appropriate in the circumstances of this case for two reasons. The first concerns fairness. By initially suggesting an intent to pursue the defense of effecting an arrest and then disavowing it, counsel effectively indicated to the Commonwealth that it need not present evidence aimed at

_____

[10] The judge's proposed instruction stated as follows:

"Because of the nature of the job, a police officer is permitted to use force in carrying out his official duties if such force is necessary and reasonable. Members of the jury in your deliberations you are to determine whether the Commonwealth has proved beyond a reasonable doubt that the defendant Jeffrey Asher [is] guilty of the offenses charged. Melvin Jones is not the defendant in this trial -- however you did hear testimony in this trial about the actions of Melvin Jones when confronted by members of the Springfield Police Department.

"A person who is arrested by someone who he knows is a police officer is not allowed to resist that arrest with force, whether the arrest is lawful or not. Even if the arrest is illegal, the person must resort to the legal system to restore his liberty.

"However, a police officer may not use excessive or unnecessary force to make an arrest -- whether the arrest is legal or illegal -- and the person who is being arrested may defend himself with as much force as reasonably appears to be necessary."

overcoming this defense.[11]  Indeed, the prosecutor argued during the charge conference that had she anticipated a defense based on the use of force to effect an arrest and a related jury instruction, she would have called a potential expert witness to rebut this theory.[12]

Second, and more importantly, the judge was correct in her eventual conclusion that her proposed instruction would have confused and potentially misled the jury.  The planned instruction was based on the District Court's model jury instruction on police privilege and resisting arrest, which primarily serves to articulate that a civilian who is being arrested by someone the civilian knows is a police officer must submit to the arrest and may not use force against the arresting officer unless the officer uses excessive or unnecessary force to make the arrest.  See Instruction 9.260, at 12-13.[13]  This

---

[11] Although defense counsel's express disavowals were made during pretrial hearings, during the trial itself counsel did not suggest a change in position until the final charge conference that took place after the close of the evidence.

[12] The defendant's late-breaking about-face also put the judge in the position of having to determine, after the close of the evidence, whether an instruction on a theory that the defendant had previously disclaimed was nevertheless warranted based on the facts.  In these circumstances, the judge's last-minute change of approach may have been at least in part a product of the confusion that the defendant generated on this issue.

[13] In addition to the substance of the model instruction, the cases cited at the end of that instruction suggest that it

case, however, presents the opposite scenario:  the defendant

was a police officer charged with assault and battery on a

civilian.  In addition, to the extent that both the model

instruction and the trial judge's proposed instruction discussed

self-defense, like the model instruction, the proposed

instruction spoke only of a civilian's right to defend himself

or herself against a police officer who uses excessive force,

not the other way around.[14]  See note 10, supra.  See also

Instruction 9.260.  Accordingly, the instruction was structured

so as to focus the jury on evaluating the actions of the

putative arrestee and on whether those actions were reasonable

in light of the police officer's use of force, rather than on

the reasonableness of the police officer's actions.  But here,

---

is designed for use in cases involving charges of resisting
arrest or assault and battery on a police officer or similar
authority figure.  See Commonwealth v. Moreira, 388 Mass. 596
(1983) (assault and battery of police officer); Commonwealth v.
Martin, 369 Mass. 640 (1976) (various charges stemming from
assault of correction officer); Commonwealth v. Urkiel, 63 Mass.
App. Ct. 445 (2005) (resisting arrest); Commonwealth v. Graham,
62 Mass. App. Ct. 642 (2004) (resisting arrest and three counts
of assault and battery of police officer); Commonwealth v.
Francis, 24 Mass. App. Ct. 576 (1987) (assault and battery of
correction officer);  Commonwealth v. McMurtry, 20 Mass. App.
Ct. 629 (1985) (assault and battery of correction officer).

[14] For an example that illustrates a civilian's right to use
self-defense against a police officer in limited circumstances,
see Commonwealth v. Graham, 62 Mass. App. Ct. 642, 649-654
(2004), in which the Appeals Court noted that "where the officer
uses excessive or unnecessary force to subdue the arrestee,
. . . the arrestee may defend himself by employing such force as
reasonably appears to be necessary."  Id. at 652, quoting
Moreira, 388 Mass. at 601.

where the defendant was a police officer who claimed that his actions were necessary for self-defense and defense of others against violence at the hands of the victim, the opposite focus was the essential one, that is, whether the officer's claims in response to the victim's alleged use of force and related conduct were reasonable. Given the context, the proposed instruction's potential for creating juror misunderstanding was a real one.

But that is not the end of the matter. Although the judge did not err in declining to give her proposed instruction, this case was fundamentally about the reasonableness of a police officer's use of force against a civilian; therefore, the judge's instructions should have acknowledged the defendant's status and explained that, as a police officer, the defendant would have been justified in using force in connection with his official duties, including effecting an arrest, as long as such force was necessary and reasonable.[15] The language that begins the model instruction on police privilege and resisting arrest

---

[15] Cf. Commonwealth v. Young, 326 Mass. 597, 601-602 (1950) (police officer convicted of manslaughter of civilian; reasonableness of officer's acts in attempting to arrest armed suspect was key question for trier of fact to decide); Powers v. Sturtevant, 199 Mass. 265, 265-266 (1908) (tort action for assault by police officer on civilian; judge properly instructed jury that defendant had right "to arrest the plaintiff and to use such force as was reasonably necessary to overcome any resistance which he offered[,] but the defendant had not the right to use unreasonable or excessive force").

is not the only possible approach, but this language does convey a police officer's right to use reasonable force. See Instruction 9.260, at 12 ("Because of the nature of the job, a police officer is permitted to use force in carrying out his [her] official duties if such force is necessary and reasonable").

In addition, the defendant raises legitimate concerns with respect to the judge's instruction on self-defense. In keeping with the model jury instruction on self-defense, the judge referenced a defendant's obligation to do "everything reasonable in the circumstances to avoid physical combat before resorting to force" including considering "avenues of escape that were reasonably available." See Instruction 9.260, at 2, 4. We agree with the defendant that a police officer has an obligation to protect his fellow officers and the public at large that goes beyond that of an ordinary citizen, such that retreat or escape is not a viable option for an on-duty police officer faced with a potential threat of violence. Cf. Reed v. Hoy, 909 F.2d 324, 331 (9th Cir. 1989), cert. denied, 501 U.S. 1250 (1991), recognized as overruled on other grounds, Edgerly v. City & County of San Francisco, 599 F.3d 946, 956 n.14 (9th Cir. 2010) (duty to retreat before resorting to deadly force "may be inconsistent with police officers' duty to the public to pursue investigations of criminal activity" and should not apply absent

clear authority, which plaintiff had not identified).  The supplemental model instruction on the duty to retreat before resorting to the use of force in self-defense should not have been given in this case.  Furthermore, while it is appropriate to require a police officer to do "everything reasonable in the circumstances to avoid physical combat before resorting to force" against a civilian, the question must be whether the defendant as a police officer had reasonable options available other than to use force -- not whether a similarly situated civilian would have had other options.

In sum, the judge's instructions to the jury were erroneous in two respects:  (1) they failed to acknowledge, particularly in connection with the claim of self-defense, that the defendant was a police officer and that he was entitled to use force in carrying out his official duties if and to the extent such force was necessary and reasonable; and (2) the self-defense instruction included an erroneous statement that the defendant had a duty to retreat if possible under the circumstances.  We turn, then, to the question whether the errors were prejudicial to the defendant.  "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,'

then it is prejudicial."  Cruz, 445 Mass. at 591,

quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

Considering the jury instructions as a whole, as we must, see Commonwealth v. Niemic, 427 Mass. 718, 720 (1998), S.C., 451 Mass. 1008 (2008), as well as the strength of the Commonwealth's case, we conclude that the errors were not prejudicial.  At trial, the defendant admitted to hitting the victim repeatedly with the flashlight, the victim clearly sustained significant injuries, and the only issue was whether the defendant's acts were justified.  The record as a whole presents extremely strong evidence that the defendant did not strike the victim in the manner that he did in self-defense and in defense of his fellow officers.  The video recording of the beating showed three officers surrounding a single victim, who was bent over the hood of a car as the defendant struck him repeatedly with a flashlight.  Sedergren, who was on top of the victim's back and was holding him around the neck, weighed between 250 and 260 pounds at the time of the incident; the victim, by comparison, weighed about 165 or 170 pounds.  None of the officers saw the victim's hand on Sedergren's gun.  Moreover, based on the officers' positioning around the victim, it was implausible if not impossible that the victim could have reached the gun, because it was holstered on the right side of Sedergren's body,

where Truoiolo was.[16] As previously noted, the video recording also belied the defense's theory, because although an officer can be heard on the recording yelling "smash him in the knees," see note 3, supra, there was no audible statement or reference regarding a gun.

Furthermore, as part of her charge on self-defense and defense of another, the judge explained that whether a defendant was justified in using force in his or her own defense or in defense of others depended upon what a reasonable person would have done in the circumstances that were presented to the defendant. See Instruction 9.260, at 1-5, 17. Even in the absence of a specific instruction on the defendant's status as a police officer, it was clear to the jury that he was, in fact, an officer, and that at the time of the incident, he was involved in a traffic stop as part of his official duties. Moreover, through Sedergren's and Truoiolo's testimony, the defendant introduced evidence concerning the "continuum" of force that police officers are trained to use in responding to

---

[16] Although Truoiolo did not have control of the victim's hands, he testified that the victim's left hand was on the other side of Sedergren (meaning Sedergren's left side) and that the victim's right hand was somewhere in front of the victim. This positioning was consistent with the fact that the victim was bent over the hood, with Sedergren over the victim's back on the left side and Truoiolo to the victim's right. If the victim's left hand was on Sedergren's left side, and the victim's right hand was in front of him, the victim could not have reached a gun that was on the right side of Sedergren's body.

an individual who presents varying degrees of threatening behavior or resistance.  We presume that the jury followed the judge's instruction, and in doing so, we assume that they evaluated the defendant's claims of self-defense and defense of others from the perspective of what a reasonable police officer would have done in the circumstances presented to him or her.

Finally, we conclude with "fair assurance," Cruz, 445 Mass. at 591, that if the judge had charged the jury that the defendant was entitled to use such force as was necessary and reasonable to carry out his official duties, the addition of this instruction would not have had an effect on the verdicts. The force that the defendant used here -- repeated blows with a flashlight to the head and other parts of the body of a victim who was bent over the hood of an automobile, and later lying on the ground -- was extreme and went beyond that which was necessary for the accomplishment of any of the defendant's responsibilities as a police officer that night.  Even if the defendant believed at one point that the victim was trying to grab Sedergren's gun, that danger would have completely dissipated by the time the victim was on the ground; yet even then, the defendant continued to strike the victim.  In these circumstances, assuming the jury had been instructed properly about the defendant's police officer status, the jury reasonably could not have found that the beating was justified.

Conclusion.  For the reasons that have been discussed, the jury instructions in this case should have been more narrowly tailored to reflect the fact that the defendant was a police officer engaged in his official duties at the time of the incident.  However, given the strength of the evidence against the defendant and the weakness of his defenses, we conclude that the errors were not prejudicial and that the defendant is not entitled to a new trial.

Judgments affirmed.