COMMONWEALTH *vs.* CHRIS CARROLL.

Suffolk. February 3, 2003. - June 13, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Evidence,* Prior misconduct, Relevancy and materiality. *Joint Enterprise. Assault and Battery by Means of a Dangerous Weapon. Intent. Practice, Criminal,* Argument by prosecutor, Assistance of counsel. *Constitutional Law,* Assistance of counsel.

At the trial of an indictment for assault and battery by means of a dangerous weapon under a joint venture theory, the judge did not abuse her discretion by allowing the Commonwealth's motion in limine to exclude evidence of the codefendant's independent motive to beat the victim, and therefore, the exclusion of such evidence did not violate the defendant's right to present a full defense under the Sixth Amendment to the Constitution of the United States, and art. 12 of the Massachusetts Declaration of Rights, where such evidence was not relevant to any live issue in the case, and where there was no requirement that the joint venturers share a motive for the success of the venture. [551-554]

At the trial of an indictment for assault and battery by means of a dangerous weapon under a joint venture theory in which the prosecutor's cross-examination of a codefendant and closing argument improperly exploited the absence of evidence excluded at his request regarding a codefendant's motive, the prosecutor's misconduct did not create a substantial risk of a miscarriage of justice, given the strength of the Commonwealth's case and the collateral nature of the motive evidence. [554-556]

At a criminal trial, defense counsel's failure to object to a prosecutor's closing argument that allegedly opened the door to excluded evidence did not constitute ineffective assistance, where the prosecutor's closing argument did not create a substantial risk of a miscarriage of justice. [556]

At the trial of an indictment for assault and battery by means of a dangerous weapon, defense counsel's failure to ask the judge to reconsider her ruling on the Commonwealth's motion in limine after the prosecutor asked questions on cross-examination that allegedly opened the door to the excluded evidence did not create a substantial risk of a miscarriage of justice, where such motion likely would have been futile in that the excluded evidence remained irrelevant. [556-557]

At a criminal trial, defense counsel's failure to object to certain hearsay statements of the victim did not amount to ineffective assistance, where the statements qualified as excited utterances, and where, if some testimony was admitted that should not have been, the evidence would not likely have created a substantial risk of a miscarriage of justice, given the strength of the Commonwealth's case. [557]

INDICTMENT found and returned in the Superior Court Department on March 4, 1997.

The case was tried before *Wendie I. Gershengorn*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Tanis M. Yannetti* for the defendant.

*Christina E. Miller*, Assistant District Attorney (*John P. Pappas*, Assistant District Attorney, with him) for the Commonwealth.

SPINA, J. The defendant was indicted for mayhem and assault and battery by means of a dangerous weapon (a shod foot) in connection with a beating in Chelsea on February 9, 1997. The defendant's first trial ended in a mistrial after the jury reported that they were unable to reach a verdict. The defendant was retried[1] and found not guilty of mayhem but guilty of assault and battery by means of a dangerous weapon.

On appeal the defendant alleges (1) that the trial judge violated his constitutional right to present a defense by excluding evidence of the codefendant's independent motive to commit the crimes, which evidence had been admitted at the first trial; (2) that the prosecutor denied the defendant a fair trial by inviting inference from the absence of the excluded evidence in the course of his cross-examination of the codefendant, Carlos Ramirez, and in his closing argument; and (3) that trial counsel was ineffective. The Appeals Court affirmed the conviction in an order and unpublished memorandum pursuant to its rule 1:28. See *Commonwealth* v. *Carroll*, 55 Mass. App. Ct. 1114 (2002). We granted the defendant's application for further appellate review. We affirm the conviction.

1. *Background.* The jury at the second trial could have found the following facts. At about 3 A.M. on February 9, 1997, the victim, after spending the night drinking in several establishments, was walking to the home of a friend in Chelsea, where he had arranged to spend the night. When he was a few doors away from his friend's home, he heard a car door closing behind him. Turning, he saw a black Mazda RX-7, an automobile that

---

[1]The judge, the prosecutor, and defense counsel were the same at both trials.

he recognized as belonging to the defendant. Someone struck him on the back of the head. He then saw the defendant and a young Hispanic male whom he did not recognize. He fell to the ground, curled into a fetal position, and was repeatedly beaten, kicked and punched by both men for several minutes. He yelled for them to stop. When the beating ended he picked himself up and ran to his friend's house where he banged on the back door and cried for help. His friend opened the door, helped him in, and then telephoned 911.

Officers Bernard Grayson and Michael Nee of the Chelsea police department arrived at the house within five minutes. Grayson asked the victim if he knew who had done this to him and he replied that it was the defendant and a Hispanic male whom he did not know. He described the Hispanic male and said that he wore baggy white pants and a red, white, and black jacket. He also described the defendant's car. The victim was taken by ambulance to a hospital. As a result of the beating, he suffered a broken nose, a broken and shattered left cheekbone, and a broken left orbital bone. His left eye had to be surgically removed. He also suffered a laceration on his right knee that required stitches.

At about 4:50 A.M. on February 9, Chelsea police stopped a vehicle matching the description given by the victim. They sent a message by radio for Officers Grayson and Nee, who arrived within a few minutes. Grayson asked the driver, whom he recognized as the defendant, to step out of the car. He noticed blood on the defendant's sneakers. The defendant and his passenger, Carlos Ramirez, were both arrested and taken to the Chelsea police station. The defendant's sneakers were removed, tagged as evidence, and sent to a State police laboratory for testing. A State police chemist who conducted enzyme profile tests on the blood from the right sneaker (the left had an insufficient amount for testing) and on blood samples from the victim, the defendant, and Ramirez, testified that the blood on the toe of the defendant's right sneaker did not come from either the defendant or Ramirez, and that it was consistent with the victim's blood. The police did not notice any blood on Ramirez's footwear or his clothing, and therefore did not seize anything from him. They did notice that Ramirez had fresh

abrasions along the knuckles and the back side of the fingers of his hands. The Commonwealth offered no evidence of a motive for the attack.

The defendant testified that at about 3 A.M. on February 9, 1997, as he was driving Ramirez home from a movie that they had seen together, the victim flagged him down. He said that the victim, whom he recognized, had come up to the window of his car and asked him if he had any cocaine. He said that he did not. They talked for a few minutes. The victim then asked whether he had change for a twenty dollar bill, because he was still going to shop for drugs but wanted to have the correct change. The defendant pulled all the bills from his pocket, approximately eighty dollars, and held them in his left hand, which was resting on or near the steering wheel. When the defendant reached for a pen in the glove compartment to write down his telephone number for the victim, the victim grabbed the bills and fled. The defendant testified that he was not particularly upset because he knew the victim's family and was confident that he could get the money back. Neither the defendant nor Ramirez pursued the victim, and he continued to drive Ramirez home.

As they were turning a corner at a speed of less than five miles per hour and decelerating, a pedestrian crossed the street ahead of them. Ramirez suddenly jumped out of the car and approached the pedestrian, whom the defendant immediately recognized as the victim. The victim turned and fled down an alleyway and Ramirez chased after him. The defendant testified that he drove his car up the block looking for the two men. He parked his car, then he heard screaming, which led him to where Ramirez was kicking and hitting the victim. The defendant testified that the victim's blood got on his sneakers as he stepped over him to intervene and pull Ramirez away. The victim then got up and ran off. The money was never recovered.[2] The defendant drove Ramirez home, but the doors were locked, so they went to a local restaurant for an early breakfast. Later, as he was again driving Ramirez home, the police stopped his car and arrested them.

---

[2]The victim's sister picked up his clothes at the hospital. She found no money in the pockets.

Ramirez pleaded guilty to mayhem and assault and battery by means of a dangerous weapon in connection with the incident, before the defendant's first trial. He testified at both trials consistent with the defendant's testimony at both trials.

2. *Excluded evidence*. At the start of the second trial the prosecutor filed a motion in limine to exclude certain testimony of Ramirez that had been admitted at the first trial. At the first trial Ramirez testified that, six months before the February 9 incident, the victim had approached him while he was playing basketball and asked if he had any drugs to sell, or if he knew anyone who did. Ramirez, annoyed at being interrupted, told him he had none. The victim then left. At the end of the game, Ramirez noticed that his belongings were missing. He concluded that the victim was the only person who could have taken his belongings. A day or two later he saw the victim who, on seeing Ramirez, fled. Shortly afterward Ramirez met one of his friends with a necklace that belonged to Ramirez, and had been one of the items taken. Ramirez learned that his friend had bought it from the victim.

Ramirez had testified at the first trial that this prior event flashed through his mind when the victim took the defendant's money on February 9, and that he had determined to beat the victim the next time he saw him. When he saw the victim crossing the street a few minutes later, he became so enraged that he leapt out of the defendant's car and proceeded to beat and kick the victim.

In support of his motion in limine, the prosecutor argued that evidence of Ramirez's motive constituted prior bad act evidence against the victim that could not properly be used to impeach him. The prosecutor also argued that the incident was too remote in time to be relevant. The defendant argued that the evidence was relevant to show Ramirez's motive and state of mind, and to show that the victim and Ramirez knew one another. The judge ruled that the reasons advanced by the defendant did not go to any live issues in the case, and she allowed the motion in limine.

3. *Right to present a defense*. The defendant argues that the exclusion of evidence of Ramirez's motive to beat the victim violated his right to present a full defense under the Sixth

Amendment to the Constitution of the United States, and art. 12 of the Massachusetts Declaration of Rights.

The defendant relies on a narrow line of cases in which convictions were reversed because a defendant was precluded from presenting evidence, including motive evidence, that some other person committed the crime. See, e.g., *Commonwealth* v. *Jewett*, 392 Mass. 558 (1984); *Commonwealth* v. *Keizer*, 377 Mass. 264 (1979); *Commonwealth* v. *Murphy*, 282 Mass. 593 (1933). Those cases are distinguishable. In each of those cases, there was significant evidence of misidentification of the defendant as the perpetrator, and fairness demanded that the defendant be given an opportunity to present evidence that a third person committed a strikingly similar crime, not too remote in time or place, that would be relevant to the issue of misidentification. Here, the defendant was not misidentified in the sense that he did not claim that he was not present when the crime was committed. Moreover, he was permitted to present evidence that someone else, Ramirez in particular, committed the crime. Indeed, the Commonwealth's theory was that Ramirez had also participated in the attack on the victim, thus eliminating any dispute as to whether Ramirez was culpable. There was no need for the defendant to resort to motive evidence to establish that "someone else" could have committed the crime where Ramirez and the defendant both testified that Ramirez alone beat the victim and that the defendant's only involvement was to intervene on behalf of the victim. The issue was not whether Ramirez had committed the crime — by all accounts he had — but what the defendant's role in that crime had been, if any.

The defendant contends that the evidence of Ramirez's motive was necessary to explain to the jury why Ramirez would have acted alone in assaulting the victim. The right to call witnesses and present a defense under the Sixth Amendment and art. 12 is not absolute. In the face of "legitimate demands of the adversarial system," this right may be tempered according to the discretion of the trial judge. *Commonwealth* v. *Edgerly*, 372 Mass. 337, 343 (1977), quoting *United States* v. *Nobles*, 422 U.S. 225, 241 (1975). See *Commonwealth* v. *Blaikie*, 375 Mass. 601, 608 (1978). "For example, a trial judge has the discretion

to control the scope of the examination of witnesses, *United States* v. *Nobles, supra* at 241, and can exclude witnesses whose testimony is cumulative, repetitive, or confusing, *Hamling* v. *United States*, 418 U.S. 87, 127 (1974)." *Commonwealth* v. *Durning*, 406 Mass. 485, 495 (1990). Evidence of Ramirez's motive was, as the judge ruled, not relevant to any live issue in the case.

The central issues in the case were whether the defendant was liable as a principal, and whether he was liable under a theory of joint venture. To obtain a conviction of the defendant as a principal for the crime of assault and battery by means of a dangerous weapon, the Commonwealth was required to prove that the defendant intentionally kicked the victim. See *Commonwealth* v. *Appleby*, 380 Mass. 296, 307 (1980). To obtain a conviction of the defendant under a theory of joint venture liability the Commonwealth was required to prove that the defendant was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983). As to the element of intent under joint venture liability the Commonwealth had to show that the defendant shared or knew of Ramirez's intent to do the acts that caused the victim's injuries, and that by agreement he was willing to help Ramirez if necessary.

There is no requirement that joint venturers share a motive for the success of the venture. Motive is not an element of proof under the theory of joint venture. Evidence of motive may be admitted if it "tends to establish the issue" or "contradicts a link in the chain of proof." *Commonwealth* v. *Weichell*, 390 Mass. 62, 73 (1983), cert. denied, 465 U.S. 1032 (1984), quoting *Commonwealth* v. *Abbott*, 130 Mass. 472, 473 (1881). Evidence that Ramirez may have had a separate and distinct motive to act would not tend to establish or contradict any link in the chain of proof of the defendant's intent to support an attack on the victim. Joint venturers may well have independent motives for participating in the joint venture. Ramirez's motive was not inconsistent or antagonistic with a

theory of joint venture. There was no evidence that Ramirez would not have acted except by himself. The essence of the question of the defendant's involvement as a joint venturer was whether he was willing to help Ramirez beat the victim when he was present at the time Ramirez was carrying out that beating. Thus, evidence of Ramirez's motive was irrelevant to the issue of the defendant's guilt as a joint venturer.

Moreover, the evidence could distract and confuse the jury in their task of deciding whether the Commonwealth met its burden of proving that the defendant intended to kick and beat the victim, or that he knew of Ramirez's intent to kick and beat the victim and was willing to assist Ramirez, if necessary. The judge did not abuse her discretion by excluding evidence of Ramirez's motive. See *Commonwealth* v. *Rosa*, 422 Mass. 18, 24-25 (1996).

4. *Prosecutor's cross-examination and closing.* The defendant next argues that the prosecutor interfered with his right to a fair trial by repeatedly inviting inferences during his cross-examination of Ramirez and in his closing argument about Ramirez's motive to beat the victim, the very matter that he had succeeded in excluding from evidence. "A prosecutor is barred from referring in closing argument to matter that has been excluded from evidence, *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977), and a prosecutor should also refrain from inviting an inference from the jury about the same excluded subject matter." *Commonwealth* v. *Grimshaw*, 412 Mass. 505, 508 (1992). See *Commonwealth* v. *Coughlin*, 182 Mass. 558 (1903). There was no objection either to the particular cross-examination or to the closing argument. We review to determine if the alleged misconduct created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

On direct examination, defense counsel asked Ramirez how he came to know the defendant, and Ramirez said that they had met through Ramirez's older brother, who had been a friend of the defendant when they were in school together. He elicited from Ramirez that he "got mad" when the victim took the defendant's money. On cross-examination the prosecutor elicited from Ramirez that he was "not a good friend of [the defen-

dant]," and that he did not "know him that well." The prosecutor also elicited from Ramirez that he "got mad" when he saw the victim take the defendant's money. The prosecutor later asked Ramirez: "What set this all off was . . . when you say [the victim] took . . . some money from someone you don't even really know," which Ramirez acknowledged was true.

In his closing argument, defense counsel did not refer to Ramirez's motives except to say: "He told you how it happened. He told you what he did, what was going through his mind." The prosecutor argued in this closing: "Consider what you're hearing; that [Ramirez] was mad because money was taken from someone else that he didn't even know very well. And the person that should have been mad, the person who the money was taken from [the defendant], wasn't even going to sweat it. Money taken right out of his hand. Don't worry about it. Doesn't make any difference."

Viewing the prosecutor's closing argument in its entirety, *Commonwealth* v. *Earltop*, 372 Mass. 199, 204 (1977), we conclude that he improperly exploited the absence of evidence that had been excluded at his request. The prosecutor obliquely suggested in his cross-examination of Ramirez, and forcefully in his closing argument, that the only motivating influence anyone had to beat the victim was the theft of the defendant's money; and that it made no sense that, as between Ramirez and the defendant, revenge for the theft of the defendant's money could better explain why Ramirez alone would beat the victim. The prosecutor's argument about Ramirez's motive would not have been plausible had the evidence of Ramirez's motive been admitted. Although the prosecutor technically did not refer to the excluded material, he took unfair advantage of its absence.

However, given the strength of the Commonwealth's case and the collateral nature of the motive evidence, the prosecutor's misconduct did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002). The victim testified that both men beat him, and the medical evidence confirmed that he was beaten in separate parts of his body, as the victim testified. The defendant supplied the Commonwealth with the motive that it was lacking: the victim's theft of his money. The police noted blood only on the

defendant's sneakers, including blood on the toe area (where blood would be expected to be seen after kicking a victim), and in sufficiently high concentration to make it extremely unlikely that it was transferred to his sneakers as a result of accidental contact while stepping over the victim. In contrast, the police saw no blood on Ramirez, who had been wearing white pants, an unlikely scenario if Ramirez had been the only one beating the victim for the length of time involved and given the severity of the victim's injuries. Moreover, Ramirez's credibility was seriously impeached when he tried to explain the absence of blood on his white pants by changing his testimony to say that he wore dark pants over the white pants (the victim having described Ramirez as wearing white pants). Finally, the manner in which the defendant was driving his car around the street corner before Ramirez jumped out was consistent with the defendant and Rammirez's looking for the victim and engaging in a joint venture at that time to find and beat him.[3]

5. *Assistance of counsel.* The defendant argues that counsel was ineffective for (a) failing to object to the portion of the prosecutor's closing argument discussed in Part 4, *supra*; (b) failing to ask the judge to reconsider her ruling on the Commonwealth's motion in limine after the prosecutor allegedly opened the door to the excluded evidence; and (c) failing to object to certain hearsay statements of the victim.

Because there was no objection to the prosecutor's closing and because we have concluded that the prosecutor's argument did not create a substantial risk of a miscarriage of justice, trial counsel's failure to object to the prosecutor's closing argument cannot have created a substantial risk of a miscarriage of justice and therefore cannot have constituted ineffective assistance of counsel. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 295-296 (2002).

There is no merit to the argument that counsel should have asked the judge to reconsider her ruling on the Commonwealth's motion in limine. Although the prosecutor may have asked

---

[3]Contrary to the defendant's claim about the significance of the excluded evidence, he never referred to Ramirez's motive in his closing argument at the first trial, but instead concentrated on painting a picture of the victim as an unreliable witness, much as he did at the second trial.

some questions of Ramirez about his motive that should not have been asked, that would not entitle the defendant to present the previously excluded evidence. It remained irrelevant to the defendant's intent, which was the issue at hand. A motion to reconsider likely would have been futile, and a failure to request reconsideration, therefore, would not have constituted conduct "falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). At best, he would have been entitled to a motion to strike and a curative instruction, but the failure to request such intervention did not create a substantial risk of a miscarriage of justice, for reasons we have discussed.

Finally, the defendant argues that counsel was ineffective for failing to object to certain hearsay statements of the victim. The victim's statement to his friend on being helped into the house, crying, "Please help me. Help me. My eye. They beat me. They beat me," made under the sway of the exciting event, undoubtedly would have been admitted as an excited utterance. See *Commonwealth* v. *Young*, 401 Mass. 390, 403 (1987). A judge has broad discretion to admit such evidence. See *Commonwealth* v. *Fuller*, 399 Mass. 678, 682 (1987). Any objection, therefore, would likely have been futile, and counsel's failure to object did not constitute ineffective assistance of counsel. See *Commonwealth* v. *Cohen*, 412 Mass. 375, 392 (1992).

Similarly, the victim's statements to police shortly after the incident qualified as excited utterances. However, as those statements took on an historic character and lost their spontaneity, counsel objected and the judge sustained the objection. Whether counsel should have objected sooner is a more difficult question. If some testimony was admitted that should not have been, it was cumulative of other testimony and there was very little of it. The evidence would not likely have created a substantial risk of a miscarriage of justice, given the strength of the Commonwealth's case.

*Judgment affirmed.*