## Commonwealth *vs.* Barry F. Gaynor.

No. 07-P-414.

Plymouth. March 18, 2008. - October 30, 2008.

Present: Cohen, Trainor, & Meade, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Evidence,* Prior violent conduct. *Practice, Criminal,* Argument by prosecutor.

At the trial of an indictment charging assault and battery by means of a dangerous weapon, a Superior Court judge properly denied the defendant's pretrial motion to admit evidence of the victim's prior violent acts, where the identity of the victim as the first aggressor was not in dispute; where even if the evidence theoretically was admissible in the circumstances, the judge was entitled to exercise her discretion to exclude the evidence offered by the defendant; and where, in light of the way in which the case was submitted to the jury, there could be no prejudice to the defendant from the exclusion of the evidence. [73-76]

At the trial of an indictment charging assault and battery by means of a dangerous weapon, no substantial risk of a miscarriage of justice arose from the prosecutor's closing argument, where, in all challenged respects, it was based on the evidence and the fair inferences that could be drawn from the evidence. [76-77]

Indictment found and returned in the Superior Court Department on February 15, 2002.

The case was tried before *Janet L. Sanders,* J.

*Robert F. Shaw, Jr.,* for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

Cohen, J. Following a jury trial, the defendant was convicted of assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A, for the near-fatal stabbing of Don Anderson, the former boyfriend of the defendant's then girlfriend and the father of her child.[1] The defendant's primary

---

[1] The jury acquitted the defendant of a charge of armed assault with intent to murder, in violation of G. L. c. 265, § 18.

argument on appeal is that the trial judge erred in denying his pretrial motion to admit evidence of the victim's prior violent acts, pursuant to *Commonwealth* v. *Adjutant*, 443 Mass. 649 (2005). We affirm, concluding that the *Adjutant* rule is not applicable on the facts of this case, and that, regardless, the judge was entitled to exclude the proffered evidence as a matter of her discretion.

*Background.* On the evening of the incident, January 16, 2002, the victim had consumed several beers. He attempted to telephone his son at his ex-girlfriend's home, and was told by a friend who answered the phone that the child was out having dinner with his mother and "her new boyfriend." The friend gave the victim the defendant's cellular telephone (cell phone) number and assured him that it was not a problem to call it.

When the victim called the defendant's cell phone, the defendant refused to let the victim speak to his son, and the two men engaged in a heated verbal quarrel. Over the course of several additional calls, the conversation became more abusive. The victim also left menacing messages on the defendant's voice mail. Eventually, the defendant and the victim agreed to meet at a bar.

When the victim arrived and parked his car, the defendant was standing across the street from the bar. The victim walked across the street to the defendant, and the two men yelled at each other. The victim then "started swinging," punching the defendant in the face several times and banging his head into cars. The fight migrated across the street, where the victim beat the defendant to the ground.

The only two percipient witnesses who testified at trial, the victim and a passerby, gave differing accounts of the events that followed.[2] The victim testified that he continued to punch the defendant as the defendant remained on the ground covering his face. Someone then came up from behind the victim, grabbed him, and restrained him. Although he tried to get free, the victim was unable to move. Less than a minute later, the defendant got up from the ground and stabbed the victim in the abdomen.

The passerby testified that, while he was driving down the

---

[2] The defendant did not testify; however, his statement to police was put in evidence. He was unable to remember anything about the incident.

street, he saw two people fighting by the side of the road, whom he later identified as the defendant and the victim. The victim was kneeling on top of defendant's legs and punching him. The passerby approached to see if either of the people involved was someone he knew from school, but backed up when he saw that they were middle-aged men whom he did not recognize. He asked them what was going on, and one of them told him to leave. He noticed that there was another man present, who appeared to be acquainted with the defendant.

The passerby watched the combatants continue to yell at each other, the victim remaining on top of the defendant. The victim then got off the defendant, who rose from the ground looking dazed and confused. The victim first told the defendant to go back in the bar, and then told him to take off his coat and fight like a man. The men were three to four feet apart, no one was holding the victim, and there was nothing behind the defendant to prevent his escape. A "half a minute" later, the defendant pulled a knife from his hip and stabbed the victim.

*Discussion.* "[T]he right of self-defense ordinarily cannot be claimed by a person who provokes or initiates an assault unless that person withdraws in good faith from the conflict and announces his intention to retire." *Commonwealth* v. *Pring-Wilson*, 448 Mass. 718, 733 (2007), quoting from *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978). "Even if a defendant does not initiate the fight (or withdraws after initiating it), where he uses deadly force — as the defendant did here by stabbing [the victim] with a knife — the defendant is not entitled to an instruction on self-defense unless there is evidence warranting at least a reasonable doubt that he (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case." *Pring-Wilson*, *supra*, quoting from *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980).

Where it is disputed at trial whether the defendant provoked or initiated the assault, "evidence of specific acts of prior violent

conduct that the victim is reasonably alleged to have initiated" are admissible at the discretion of the judge.[3] *Pring-Wilson, supra* at 720, quoting from *Adjutant,* 443 Mass. at 664. Such evidence is admissible "for the limited purpose of supporting the defendant's self-defense claim that the victim was the first aggressor." *Adjutant, supra* at 660. "A defendant who intends to introduce evidence of the victim's specific acts of violence to support a claim that the victim was the first aggressor must provide notice to the court and the Commonwealth of such intent and of the specific evidence he intends to offer." *Id.* at 665.

Here, the defendant filed a pretrial motion seeking leave to introduce the following evidence of alleged violent behavior by the victim: two violations of restraining orders, on July 2, 1998, and June 29, 1998; a conviction for disturbing the peace arising out of an otherwise undescribed incident on October 31, 1998; several inappropriate responses to attempts by the victim's ex-girlfriend to end their relationship, including an incident on June 19, 1998, when the victim removed wires from her car, disabling it, and, later that day, threatened suicide with a knife; and another incident on November 9, 1999, in which the victim stood outside his ex-girlfriend's house, attempted to provoke a fight, and threatened to come back and "get" her and her then-boyfriend when they tried to leave for work the following morning; and an otherwise unspecified allegation that the victim had physically abused his ex-girlfriend in the past.[4] Unconvinced of

---

[3]Contrary to the Commonwealth's assertion, this rule is not restricted to murder cases or other circumstances where the victim is unable to testify. See *Pring-Wilson, supra* at 737 (evidence of prior violent acts of victim's associate who assisted victim in fight and testified at trial also admissible at judge's discretion).

[4]The defendant also sought to introduce evidence of allegedly violent acts that occurred after the incident at question, including threats made to the ex-girlfriend, an attempt to solicit a third person to "get back" at her and the defendant, and an incident in which the victim punched the ex-girlfriend twice in the face. Because these acts took place subsequent to the incident giving rise to the charges, they were not admissible under the rule stated in *Adjutant, supra* at 664. At the motion hearing the day before trial, defense counsel also offered that a witness would testify that the victim "hit[] somebody over the head with a beer bottle prior to this incident." The record does not support the defendant's contention on appeal that the prosecution previously received notice of this proposed evidence, and, for that reason alone, it was proper to exclude it. See *Adjutant, supra* at 665.

the applicability of *Adjutant* in the circumstances of the case and skeptical of the quality of the defendant's proffered evidence, the judge conditionally denied the defendant's motion, but expressed her willingness to revisit the issue as the evidence developed at trial. After the victim testified, defense counsel renewed the motion, and the judge stood by her earlier ruling. The matter was not raised again.

There was no error in the exclusion of the proposed *Adjutant* evidence. The identity of the first aggressor was not in dispute, and there was no live issue whether the defendant was precluded from asserting self-defense on the ground that it was he who had started the fight. It was uncontroverted that, as soon as the victim arrived outside the bar, the victim initiated the assault. By his own testimony, the victim approached the defendant and "started swinging."

To be sure, there were contested issues as to whether the defendant had the right to use deadly force in self-defense and whether the defendant had the opportunity to retreat. However, on those issues, evidence of the victim's prior acts of violence was immaterial. Even if there was a break in the fight when the victim got off the defendant and stopped punching him, that did not introduce a "first aggressor" issue into the case.[5] Whether the victim remained menacing or was becalmed or immobilized bore on the defendant's reasonable belief that he was in "imminent danger of death or serious bodily harm." See *Commonwealth* v. *Tirado*, 65 Mass. App. Ct. 571, 576, 577 (2006). However, the limited rule in *Adjutant* does not authorize the introduction of the victim's prior violent acts to shed light on this question.

In any event, even if *Adjutant* evidence theoretically was admissible in the circumstances of this case, the judge was entitled to exercise her discretion to exclude the evidence offered by the defendant. As the judge stated in denying the motion, the prior incidents of domestic violence relied upon by the defendant were different in nature from the incident underlying the offense, a street fight, and they were separated in time from the

---

[5]We acknowledge receipt of a postargument letter submitted by the defendant in which he directs our attention to *Commonwealth* v. *Clemente*, 452 Mass. 295 (2008), in which the Supreme Judicial Court declined to apply the *Adjutant* rule retroactively. Nothing in *Clemente* changes our analysis.

charged offense by approximately four years.[6] See *Adjutant*, 443 Mass. at 663-664. See also *Commonwealth* v. *Gollman*, 436 Mass. 111, 115 (2002) (temporal proximity a factor in considering admission of prior bad act evidence). Moreover, the jury already had far more potent evidence of the victim's violent tendencies, having heard undisputed testimony that the victim began the physical altercation, pummeling the defendant moments before the defendant stabbed him.

Finally, in view of the way in which the case was submitted to the jury, there could be no prejudice to the defendant from the exclusion of *Adjutant* evidence. The jury were not told to consider whether the defendant had initiated the fight or that, if he had, he could not invoke self-defense. They were instructed correctly that they were to acquit the defendant of the charge if the Commonwealth failed to prove beyond a reasonable doubt that the defendant did not have a reasonable apprehension of great bodily harm or death, that the defendant had not used all proper means to avoid physical contact, and that the defendant used more force than was reasonably necessary to defend himself. As "[w]e presume that a jury follow all instructions given to it," we must presume that the jury did not find the defendant guilty on a theory on which they were not instructed. See *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997).

We briefly address the defendant's remaining argument, that the prosecutor improperly took advantage of the exclusion of the *Adjutant* evidence and characterized the defendant as the first aggressor in his closing argument. Because no contemporaneous objection was made, we consider only whether any error created a substantial risk of a miscarriage of justice. See, e.g., *Commonwealth* v. *Loguidice*, 420 Mass. 453, 455-456 (1995). We discern no improprieties in the closing argument and, therefore, need not consider its impact on the result of the trial.

As previously explained, the identity of the first aggressor was irrelevant to the jury's consideration of the case as submitted to them by the judge. Furthermore, none of the statements about which the defendant now complains intimated that the defendant was the first aggressor and that he was precluded from asserting

[6] "[T]here's no particular similarity between" a "street fight versus . . . beating up your girlfriend four years before."

self-defense on that basis. The prosecutor's argument that the defendant was not justified in stabbing the victim went to other aspects of the law of self-defense, i.e., that the fight was over and the defendant did not fear imminent harm; that the defendant did not take advantage of an available opportunity to retreat; and that the defendant's use of a knife constituted excessive force. Likewise, the prosecutor's reference to the stabbing as "another incident" was not made to suggest that the defendant was precluded from asserting self-defense because he was the first aggressor, but to emphasize to the jury that "there [was] no immediate danger of being killed or seriously injured at that point."

Other statements to the effect that the defendant had armed himself before meeting the victim and therefore possessed the intent to inflict injury even before the fight began were fair inferences from the evidence at trial, and went to the defendant's state of mind at the time of the stabbing both with respect to self-defense and the charge of armed assault with intent to murder, of which he was acquitted. Furthermore, the prosecutor actually acknowledged that the victim was the aggressor, having "kick[ed] the [defendant's] butt."

In short, in all challenged respects, the prosecutor's argument was based on "the evidence and the fair inferences which can be drawn from the evidence." *Commonwealth* v. *Braley*, 449 Mass. 316, 329 (2007), quoting from *Commonwealth* v. *Hoffer*, 375 Mass. 369, 378 (1978). Moreover, none of the cited comments "improperly exploited the absence of evidence that had been excluded at [the prosecutor's] request." See *Commonwealth* v. *Carroll*, 439 Mass. 547, 555 (2003).

*Judgment affirmed.*