NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-828
24-P-617

COMMONWEALTH

<u>vs</u>.

DANIEL BILLINGSLEY (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After being involved in a fight near a bar in Springfield, Daniel Billingsley and Christian Cicero (together, defendants) were each indicted for, inter alia, three counts of assault and battery.[2]  The defendants and their coventurers were all Springfield police officers, although they were off duty at the time of the fight.  The Commonwealth prosecuted the defendants and their coventurers as joint venturers.

---

[1] Commonwealth <u>vs</u>. Christian Cicero.

[2] In total, the defendants were each indicted on one count of assault and battery causing serious bodily injury, G. L. c. 265, § 13A (<u>b</u>); four counts of assault and battery by means of a dangerous weapon, to wit:  shod foot, G. L. c. 265, § 15A (<u>b</u>); one count of conspiracy, G. L. c. 274, § 71; and three counts of assault and battery, G. L. c. 265, § 13A (<u>a</u>).

After a jury trial in the Superior Court, the defendants were convicted on all six indictments for assault and battery.[3] Afterward, each defendant moved unsuccessfully to set aside the verdicts on the indictments relating to him, and then timely appealed from those convictions. Because we conclude that (1) the evidence was sufficient to prove the defendants' guilt under a joint venture theory, (2) the trial judge acted within his discretion in his evidentiary rulings and his limitation on the scope of the defendants' closing arguments, and (3) the prosecutor's closing argument was proper, we affirm.

Background. We summarize the facts as the jury could have found them, reserving some details for later discussion.

On April 7, 2015, the defendants were in a bar in Springfield with other off-duty police officers, including Billingsley's then-girlfriend; coventurers Anthony Cicero,[4] Jameson Williams, and John Sullivan (coventurers); and Jose

_____

[3] The judge allowed the defendants' motions for required findings of not guilty on three of the indictments for assault and battery by means of a dangerous weapon as to each defendant, and the jury acquitted the defendants of both assault and battery causing serious bodily injury, and the remaining charges of assault and battery by means of a dangerous weapon. The Commonwealth entered a nolle prosequi as to each of the indictments for conspiracy.

[4] Christian Cicero is an appellant in this case. His brother, Anthony Cicero, is a coventurer but not an appellant. For the sake of clarity, all references to "Cicero" in this opinion are to the appellant, Christian Cicero.

Diaz.[5]  At the bar, they encountered another group of patrons,

four Black men -- H.P.C., M.C., J.L-1, and J.L.-2 (victims).[6]

Late in the night, Billingsley confronted J.L.-1, whom

Billingsley believed had whistled disrespectfully at his

girlfriend.  An argument ensued, the bar manager asked the

victims to leave, and they did so.

The defendants and several of the other off-duty officers,

most of whom were white, then walked outside as the victims were

leaving, and Billingsley pushed J.L.-1 with his hand.  The

police were ultimately called and the victims walked away from

the bar, but they remained nearby for some time.  The

defendants' group returned to the bar.

At approximately 2 A.M., the coventurers left the bar and,

led by the defendants, walked in the direction of the victims.

The defendants' group of twelve to sixteen men then drew the

victims' attention, whistling and shouting, "what's up now?"

Billingsley approached the victims in the street and told them

that they "ha[d] to settle this," and the groups exchanged

---

[5] The coventurers were indicted and tried with the defendants.  Only Billingsley's and Cicero's convictions are before us in these appeals, however.

[6] The victims are identified by their initials because this decision discusses sensitive information that the defendants unsuccessfully sought to introduce under Commonwealth v. Adjutant, 443 Mass. 649 (2005).  Additionally, because two of the victims share the same initials, numerical suffixes are used.

3

words.  Diaz pointed a gun at the unarmed victims, though he did not discharge it.

This confrontation became physical when Billingsley hit J.L.-1 in the face.  Cicero and the coventurers then began striking the other victims, and a melee ensued.  J.L.-1 was punched and knocked to the ground where several men jumped on him, stomping and kicking him repeatedly while he tried to cover his face, and ultimately leaving him with bruised ribs, swollen ears, and a black eye.  Similarly, H.P.C. was knocked out and struck while apparently lying unconscious on the ground, suffering, among other injuries, a broken leg, a dislocated ankle, a concussion, and four loose teeth.  After the fight, J.L.-2 also had facial bruising, and M.C. had an injured leg and various bruises.  Furthermore, Billingsley had a right zygomatic arch fracture, and Cicero called out of work on April 8, 2015, claiming that he had a broken toe.

After the fight, on-duty Springfield police officers arrived at the scene, and the defendants, coventurers, and other off-duty officers fled.  The victims reported the incident to the responding police officers and emergency personnel that night, and H.P.C., J.L.-1, and J.L.-2 later made three attempts to file a complaint with the Springfield police department.  On the first two occasions, after explaining their interest in filing a complaint, they were told to wait and then were ignored

4

until they gave up and left the building.  On the third occasion, they managed to speak to a senior officer after waiting at the police station for four hours.

Discussion.  1. Sufficiency of the evidence.  We are not persuaded by the defendants' challenges to the sufficiency of the evidence that they engaged in a joint venture to assault and batter J.L.-1, J.L.-2, and M.C.[7]  In considering their arguments, we ask whether, viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the prosecution, see Commonwealth v. Trotto, 487 Mass. 708, 716 (2021), citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), "the evidence [was] sufficient to permit a rational juror to conclude beyond a reasonable doubt that [each] defendant knowingly participated in the commission of the crime charged, with the intent required to commit the crime." Commonwealth v. Zanetti, 454 Mass. 449, 468 (2009). Additionally, "we keep in mind that the evidence relied on to establish a defendant's guilt may be entirely circumstantial, . . . and that the inferences a jury may draw from the evidence 'need only be reasonable and possible and need not be necessary or inescapable.'"  Commonwealth v. Linton, 456 Mass. 534, 544 (2010), quoting Commonwealth v. Lao, 443 Mass. 770, 779 (2005).

---

[7] Neither defendant otherwise challenges the sufficiency of the evidence of assault and battery.

5

Our review is de novo.  Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 410 (2013).

The evidence here was sufficient.  The jury could have found that Billingsley was the first off-duty officer to argue with a victim (J.L.-1), and that he remained agitated even after the victims left the bar.  The defendants then led the initial group of off-duty officers out of the bar toward the victims, and Cicero and the rest of that group followed Billingsley for the purpose of "backing [him] up."  The defendants baited the victims, and Billingsley, with Cicero present and ready to assist, then struck J.L.-1 in the face.  In the resulting melee, the defendants both beat and "stomped" the victims, who were punched, kicked, and struck with a baton or other object.

This evidence was sufficient to permit the jury to conclude that the defendants left the bar in search of the victims and that, when they found them, the defendants both intended to initiate a fight, and, in fact, did so.  Thus, the evidence was sufficient to find that the defendants were in a joint venture with the other off-duty officers on the night in question.[8]  See Zanetti, 454 Mass. at 468 (joint venture requires proof that defendant knowingly participated in commission of crime charged,

_____

[8] Given this conclusion, we need not address any further the defendants' arguments that there was insufficient evidence that they actually assaulted or battered any particular victim or victims.

6

with intent required to commit it); Commonwealth v. Semedo, 422 Mass. 716, 719 (1996) ("An agreement between joint venturers need not be express," and may be inferred when defendant follows joint venturer to scene of crime and actively participates in commission of said crime); Commonwealth v. McCray, 93 Mass. App. Ct. 835, 843 (2018) (to establish joint venture, "[t]here is no need to prove an anticipatory compact between the parties . . . if, at the climactic moment the parties consciously acted together in carrying out the criminal endeavor," such as by approaching victim, attacking victim, and fleeing scene together).

2. _Evidentiary challenges_. On appeal, "[w]e review a judge's evidentiary rulings for an abuse of discretion" (citation omitted). Commonwealth v. Williams, 104 Mass. App. Ct. 498, 508 (2024). See Commonwealth v. Gil, 104 Mass. App. Ct. 124, 128 (2024), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (defining "abuse of discretion"). When a party's objection to the admission or exclusion of evidence was preserved, as the defendants' objections were here, we also must determine whether the trial judge's abuse of discretion prejudiced the defendant. See Commonwealth v. Souza, 492 Mass. 615, 627 (2023).

a. Adjutant evidence. We discern no abuse of discretion in the judge's denial of Billingsley's motion[9] under Commonwealth v. Adjutant, 443 Mass. 649, 650 (2005), to introduce evidence of H.P.C.'s and M.C.'s histories of violence (Adjutant evidence).[10] Where a defendant claims self-defense and the identity of the first aggressor is in dispute, the judge has discretion to admit "evidence of specific acts of prior violent conduct that the victim is reasonably alleged to have initiated." Souza, 492 Mass. at 621, quoting Adjutant, supra at 664; Souza, supra at 626. In the present case, however, the proposed Adjutant evidence was temporally remote from the fight at issue (occurring between ten and twenty-four years beforehand), and was different in kind from the fight at issue here. The judge therefore did not abuse his discretion by excluding it. See Commonwealth v. Gaynor, 73 Mass. App. Ct. 71, 75-76 (2008) (evidence of prior violent conduct that occurred four years before street fight was too temporally remote to be admitted as

---

[9] It appears that Billingsley filed this motion and others, including Cicero, joined in it.

[10] Specifically, the defendants sought to introduce evidence regarding H.P.C.'s alleged domestic assault and battery and violation of a restraining order in 1991, an alleged unprovoked assault and battery on a police officer in 1991, allegations of his unprovoked domestic violence in 1995, and an allegation of assault and battery and threatening to commit a crime in 1999. The defendants also sought to introduce evidence regarding M.C.'s conviction for breaking into and entering a neighbor's home and stabbing her with a knife in 2005.

8

_Adjutant_ evidence, and was properly excluded because it was "different in nature" than charged conduct).

b. "Use of force" training. After voir dire and over the defendants' objection, the judge permitted Springfield police Sergeant Edward VanZandt to testify about the "use of force" and defensive tactics training the officers within the department had received. We discern no abuse of discretion in the judge's ruling on the admissibility of this evidence.

This evidence was, as the Commonwealth argued, admissible to show that the defendants had the ability to end the altercation peacefully or with limited harm to the victims, and that they did not use those skills to withdraw from the fight. This was circumstantial evidence of the defendants' intent to assault and batter the victims, and the jury could have properly considered it. See Commonwealth v. Javier, 481 Mass. 268, 280 (2019), citing Commonwealth v. Fayerweather, 406 Mass. 78, 83 (1989) (evidence is generally relevant where it tends to prove any issue in case, or makes desired inference more probable than it would otherwise be). Moreover, even if that were not the case, we would discern no prejudice stemming from the admission of this evidence, as any risk of unfair prejudice created by its introduction was mitigated by the judge's instruction that the defendants had no duty to act in accordance with this training while off duty. See Commonwealth v. Peno, 485 Mass. 378, 395-

396 (2020) (noting value of contemporaneous limiting instruction in mitigating risk of prejudice); Commonwealth v. Johnston, 467 Mass. 674, 692 (2014) (juries are presumed to understand and abide by judges' instructions).

c. Victims' attempts to report. Furthermore, the judge did not abuse his discretion in admitting evidence of H.P.C.'s, J.L.-1's, and J.L.-2's efforts to file an official complaint about the fight at issue here. The testimony about their repeated attempts to report the defendants' conduct to the police created a reasonable inference that the victims did not initiate the fight. See Linton, 456 Mass. at 544, quoting Lao, 443 Mass. at 779 ("inferences a [fact finder] may draw from the evidence 'need only be reasonable and possible and need not be necessary or inescapable'"). This inference was bolstered by the evidence that neither the defendants nor any of the other off-duty police officers stayed at the scene of the fight to give a statement to responding police officers, nor did they report the incident afterward. Additionally, the judge reduced the potential prejudice of this evidence by ruling that the Commonwealth could only introduce "limited" testimony on this point. Finally, it was not an abuse of discretion to admit evidence of the victims' difficulties at the police station while attempting to report the incident, as that detail was relevant to the jury's understanding of why the victims made

10

multiple attempts to report.  See Commonwealth v. Samia, 492 Mass. 135, 149 (2023) (testimony is admissible where it is "episodic and necessary to explain" how events at issue unfolded).[11]

d.  Cicero's report of his "broken toe."  Over Cicero's objection, the judge permitted the Commonwealth to introduce an audio recording of a telephone call that Cicero made to the Springfield police station the day after the fight in question, reporting that he had broken his toe and would therefore not be at work for his scheduled shift.  Although there was evidence that Cicero might have been mistaken about the extent of his injury, there was no evidence that he was lying about his condition, and thus no reason to treat this evidence as inadmissible "bad act" evidence.  Cf. Commonwealth v. Bryant, 482 Mass. 731, 734 (2019) (limits on bad act evidence prohibit prosecution from introducing evidence of defendant's prior "misbehavior" to show bad character or criminal propensity). Cicero's statement was relevant to show that he believed his toe was broken, and so to show that he had suffered some injury to his foot.  Where there was evidence that the victims had been kicked during the fight hours earlier, evidence that Cicero

_____

[11] Because we therefore do not find that the judge abused his discretion in admitting any of the evidence the defendants contest on appeal, we need not reach the question whether any errors of the admissions had cumulative effects.

11

believed his toe was broken was thus probative of his participation in that fight.[12]  See Javier, 481 Mass. at 280, citing Fayerweather, 406 Mass. at 83.  Accordingly, the judge did not abuse his discretion by admitting that evidence.

3.  Closing arguments.  a.  Limitations on defendants' closing arguments.  After a witness repeatedly referred to the fight at issue as a "bar fight," the judge both warned counsel that he would strike any further testimony using such characterization, and prohibited the parties from using the terms "bar fight" and "street fight" in their arguments.[13]  On appeal, the defendants argue that these terms were critical to their defenses, as the terms would have allowed them to portray the fight as one between two groups of intoxicated civilians. The defendants' objection to this ruling as a limitation on their closing arguments was preserved; thus, to the extent we discern an abuse of the judge's discretion, we review the judge's ruling for prejudicial error.  Commonwealth v. Roman, 495 Mass. 412, 426 (2025).

---

[12] Indeed, this is how the Commonwealth argued the significance of the contested evidence.

[13] The judge explained his rationale by stating that those terms did not have legal definitions, and that they described something "akin to a mutual combat [situation]," which the fight in question was not.

A judge's discretion to curtail closing arguments "cannot extend to total preclusion of relevant arguments that 'remain within the bounds of the evidence and the fair inferences from the evidence,'" Commonwealth v. Cutty, 47 Mass. App. Ct. 671, 675 (1999), quoting Commonwealth v. Pettie, 363 Mass. 836, 840 (1973), but does permit the judge some leeway to "limit the scope of closings." Cutty, supra. The judge's prohibition on the defendants' closing arguments here did not preclude defense counsel from making the point that they argue to us; it merely required them to use words other than "bar fight" or "street fight" to do so.[14] Cf. Cutty, 47 Mass. App. Ct. at 674-677 (error to preclude defense counsel from mentioning defendant's testimonial alibi in closing argument). Additionally, this limitation on the defendants' closing arguments was consistent with the judge's obligation "to guard against improper arguments to the jury," see Commonwealth v. Montecalvo, 367 Mass. 46, 56 (1975), quoting Commonwealth v. Witschi, 301 Mass. 459, 462 (1938), and it therefore did not constitute an abuse of discretion.

b. Commonwealth's closing argument. Finally, we are not persuaded that the defendants are entitled to a vacatur of their convictions based on the prosecutor's closing argument. First,

_____

[14] The defendants were still able to describe the altercation as a "fight" or a "melee."

as we have explained, the judge in this case did not abuse his discretion by admitting testimony on the off-duty officers' use of force training, subject to an instruction limiting the jury's use of that evidence.  Accordingly, there was no error in the prosecutor's reference to that evidence in his closing argument, nor in his use of that evidence to rebut the defendants' self-defense claims.  See Commonwealth v. Gomez, 495 Mass. 688, 699 (2025), citing Commonwealth v. Rutherford, 476 Mass. 639, 643 (2017) (in closing argument, Commonwealth may make argument "based on the facts in evidence and the reasonable inferences drawn from those facts").

Moreover, we are not persuaded by Billingsley's additional argument that the Commonwealth's reference in closing to the victims' staying at the scene of the fight and attempting to report the incident was in error.  The evidence of the victims staying at the scene and attempting to report the incident was, as we have discussed, properly admitted, and the prosecutor was therefore entitled to argue that evidence and any reasonable inferences drawn from it.  Commonwealth v. Obershaw, 435 Mass. 794, 807-808 (2002).

Lastly, although the prosecutor's rhetorical question to the jury, asking how "what [the victims] came [to court] and [said] under oath, knowing who [they] were testifying against" "reflect[ed] on [their] credibility]," comes close to an

improper suggestion "that the [victims] [were] credible because of [their] willingness to testify," see Commonwealth v. Cooper, 100 Mass. App. Ct. 345, 356 (2021), quoting Commonwealth v. Dirgo, 474 Mass. 1012, 1013 (2016), the defendants did not object to that portion of the closing. If the oratorical flourish was improper, we nonetheless discern no substantial risk of a miscarriage of justice resulting from that misstep. See Dirgo, supra at 1016. The power disparity between the victims and the defendants (as off-duty police officers) was a theme throughout the trial, and the jury could hardly have been unaware of it. Additionally, the judge correctly instructed the jury about their role as fact finders, the factors they could consider when determining the credibility of the witnesses, and the difference between argument and evidence. In these circumstances, even assuming error, we conclude that the defendants are not entitled to a vacatur of their convictions

based on the prosecutor's argument.  See Commonwealth v. Kozec, 399 Mass. 514, 518 (1987).

Judgments affirmed.

By the Court (Rubin, Hand & Smyth, JJ.[15]),

*Paul Little*

Clerk

Entered:  July 10, 2025.

---

[15] The panelists are listed in order of seniority.