COMMONWEALTH *vs*. MANUEL MAIA.

Middlesex. April 8, 1999. - May 14, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Intent. Larceny. Evidence,* Alibi. *Practice, Criminal,* Required finding.

Evidence at the trial of a complaint for breaking and entering in the daytime
with intent to commit a felony, G. L. c. 266, § 17, was sufficient to sup-
port a reasonable inference that the defendant had the intent to commit
larceny when he broke and entered. [586-588]
At a criminal trial, the judge did not err in denying the defendant's motion for
a required finding of not guilty at the close of all the evidence, where the
evidence tending to establish the defendant's alibi was rebutted by evidence
presented by the prosecution. [588-589]

INDICTMENTS found and returned in the Superior Court Depart-
ment on February 8, 1996.

The cases were tried before *Charles F. Barrett,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Lawrence P. Murray* for the defendant.

*Amy E. Bannes,* Assistant District Attorney, for the Com-
monwealth.

ABRAMS, J. The defendant, Manuel Maia, was convicted of
breaking and entering in the daytime, G. L. c. 266, § 17, and
intimidation of a witness, G. L. c. 268, § 13 (*b*). In a memoran-
dum and order issued pursuant to its rule 1:28, the Appeals
Court affirmed the convictions. See 45 Mass. App. Ct. 1124
(1998). We granted the defendant's application for further ap-
pellate review. We consider the issues not addressed by the Ap-
peals Court: whether the defendant was entitled to a required
finding of not guilty based on insufficient proof of intent and
whether documentary evidence which supported an alibi
required a directed verdict. We also affirm the convictions.

*Facts.* On the morning of November 27, 1995, the victim
heard a loud thump emanating from his kitchen. As he entered

the kitchen to investigate, the victim saw the defendant climbing through a window, his feet outside and his torso on the floor. The screen had been broken and pushed in, and a window which had been left slightly ajar for ventilation was open completely. The defendant continued to crawl through the window. He then saw the victim. The victim asked, "Can I help you?" The defendant responded that he thought he was in his girl friend's house. The two stood silently, approximately four to five feet apart, for ten to fifteen seconds. Finally, the victim opened the kitchen door, and the defendant left. The victim called the police and gave a description of the defendant.

On November 30, the victim identified the defendant from a photographic array. On December 4, the defendant voluntarily went to the police station to answer questions. After receiving the Miranda warnings, the police told the defendant that he had been identified in a photographic array. He replied, "I should break his neck for identifying me," and made additional threatening remarks. The detective took a photograph of the defendant, which was later identified by the victim in a second array.

On December 23, the victim responded to a knock at the door. He recognized the defendant who asked, "Are you the man who said I broke into your apartment?" The victim closed the door and called the police. After the police arrived, the victim went toward the police cruiser and told the police what had happened. The defendant approached the cruiser and stated in a loud, threatening tone, "If you don't stop talking about the break, I'm going to get you." The officer chased the defendant but did not arrest him.

*Required finding of not guilty.* The Commonwealth presented the testimony of the victim and the detective who responded to the complaint and assembled the photographic arrays. During the interview, the defendant made threatening statements against the victim. The Commonwealth also presented testimony that the victim called the police on December 23, 1995, complaining that the defendant was again at his (the victim's) home. An officer in a cruiser responded. The officer stated that when he arrived at the victim's home, he saw the defendant and heard the defendant threaten the victim. The officer was unable to apprehend the defendant at that time.

The Commonwealth specified that the defendant intended to commit larceny as the felony. The defendant moved for a

required finding of not guilty as to the charge of breaking and entering with the intent to commit a felony, to wit: larceny. See Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). The motion was denied.

The defendant argues that the evidence was insufficient to establish that he intended to commit larceny.[1] According to the defendant, the Commonwealth's case lacked evidence of the actual commission of larceny or evidence of attendant circumstances, conduct, or declarations which would permit a finder of fact to conclude, beyond a reasonable doubt, that the defendant intended to commit larceny before he entered the apartment. We disagree.

Taking the evidence in the light most favorable to the Commonwealth, a rational finder of fact could have found that the Commonwealth proved the defendant's intent to commit larceny beyond a reasonable doubt.[2] *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). "A finding of intent usually is based upon what reasonably is to be inferred from conduct." *Commonwealth* v. *Ronchetti*, 333 Mass. 78, 81 (1955). The evidence showed that the defendant came to the victim's home at 9 o'clock on a Monday morning. He broke the screen to a window, opened the window, and climbed head first into the victim's kitchen. After being confronted, he claimed that he believed he was at his girl friend's apartment. Thereafter, the defendant repeatedly threatened the victim, even in the presence of police. He further told the victim, "If you don't stop talking about the break, I'm going to get you."

The mode of entry and the time of entry support a reasonable inference that the defendant intended to commit larceny. We have said that the intent to steal may be inferred where a person

---

[1]The defendant also raised an ineffective assistance claim before the Appeals Court. The Appeals Court concluded that this claim was without merit. The defendant does not contest that conclusion on this appeal.

[2]"[W]e consider only the evidence introduced up to the time that the Commonwealth rested its case, and the defendant first filed his motion[] for directed verdict[]." *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976). See *Commonwealth* v. *Gilbert*, 423 Mass. 863, 870 (1996); *Kater* v. *Commonwealth*, 421 Mass. 17, 20 (1995) ("Our principal task is to consider the Commonwealth's case-in-chief . . ."); *Cramer* v. *Commonwealth*, 419 Mass. 106, 112 (1994) ("we consider the evidence introduced up to the time that the Commonwealth rested and the defense filed its first motion for a required finding of not guilty"); *Brown* v. *Commonwealth*, 407 Mass. 84, 85 (1990), *S:C.*, 414 Mass. 123 (1993).

enters a building by force at night. See *id.* Other circumstances give rise to the same inference. See, e.g., *Commonwealth* v. *Lewis*, 346 Mass. 373, 376-380 (1963) (intent to commit larceny inferred where defendant ran into woods after being refused lawn work and defendant had no equipment or experience doing lawn work); *Commonwealth* v. *McCarthy*, 37 Mass. App. Ct. 113, 115, 119 (1994) (intent inferred where defendant broke into house and claimed he was visiting friends). Here, the time of day and mode of entry support an inference of intent. The defendant entered by force at an hour when most people are at work or away from home. The inference also is supported by the defendant's threats toward the victim. The judge did not err in denying the defendant's motion at the end of the Commonwealth's case.

The defendant next challenges the denial of his motion for a required finding of not guilty at the close of all the evidence. According to the defendant's theory of the case, he was at the River Street detoxification program (program) at the time of the crime. The defendant submitted records from the program, including a log book, a census, and other documents. These records tended to show that the defendant was admitted on November 25, 1995, and discharged on November 28, 1995, the day after the break occurred. The defendant also elicited testimony from the keeper of records from the program.[3] She testified that she spoke to the defendant on the morning of the crime and again in the mid-afternoon and evening. She further testified that program records showed that the defendant was not discharged until the day after the crime. Further, the defendant also presented testimony of a counsellor who stated he saw the defendant sometime on the day of the crime.

According to the defendant, the unimpeached documentary evidence and related witness testimony proved that the defendant was at the program at the time of the crime. Therefore, the defendant argues, the judge erred by not granting the motion. We disagree.

The evidence, which the defendant calls uncontroverted, was

[3]The witness testified about the security of the program center and procedure for keeping track of patients. She testified that: the center had one locked door and one door which was manned at all times; patients' clothing and wallets are taken at the time of admittance and not returned until they are discharged; patients wear pajamas while in the program; and records are kept to keep track of the patients.

rebutted by the testimony of a detective who investigated the program center before trial. He stated that several of the windows were broken; patients were standing outside unsupervised; there was nothing to prevent the patients from leaving; there was no one at the door when he entered; and he was allowed to wander for several minutes before finding an employee. Further, the keeper of the records conceded that nothing prevented patients from leaving the program center. Moreover, property records showed that the defendant retrieved clothing and property which he had surrendered on entering the program.[4] However, these records are undated. Thus, although the program's records demonstrate that the defendant had not been officially discharged, in view of the record as a whole, they are not uncontroverted proof that the defendant was at the program center at the time of the crime. See *Commonwealth* v. *Vaughn*, 23 Mass. App. Ct. 40 (1986) (defendant entitled to required finding of not guilty where undisputed evidence showed that defendant was in jail at time of crime). Cf. *Commonwealth* v. *Woods*, 382 Mass. 1, 9 (1980) (where defendant did not appeal denial of directed verdict, new trial granted where records from correctional facility "should be taken virtually to exclude as a practical matter the defendant's presence outside the institution at given times"). Therefore, the judge did not err in denying the defendant's motion at the close of the evidence.[5] The defendant's convictions are affirmed.

*So ordered.*

---

[4]The record tends to rebut the defendant's assertion that the Commonwealth did not present evidence to undermine the defendant's evidence that he had only pajamas at the program center.

[5]At oral argument, the defendant also suggested that the testimony of the witnesses who stated they saw him at the program center on the day of the crime, combined with the records, was sufficient to warrant a required finding of not guilty. We disagree.

The credibility of witnesses was a question for the jury. We note that the record keeper testified on cross-examination that, of the twenty-nine patients at the program center on the day of the crime, she only recalled the defendant. This testimony had to be weighed against the repeated identifications of the defendant by the victim as well as the threats made against the victim and the circumstances of the defendant's entry into the victim's house.