COMMONWEALTH *vs.* OBDULIO SANTANA.

No. 11-P-830.

Hampden. March 13, 2012. - June 8, 2012.

Present: KATZMANN, SIKORA, & AGNES, JJ.

*Breaking and Entering.*

At the trial of an indictment charging the defendant with breaking and enter-
ing a residence during the daytime with the intent to commit a felony and
with the resulting infliction of fear upon a lawful occupant, the Com-
monwealth was not required to prove beyond a reasonable doubt that the
defendant intended to put in fear any occupant of the house. [831-835]

INDICTMENT found and returned in the Superior Court Depart-
ment on July 22, 2009.

The case was tried before *C. Jeffrey Kinder,* J.

*Nadell Hill* for the defendant.

*Bethany C. Lynch,* Assistant District Attorney, for the
Commonwealth.

SIKORA, J. A Superior Court jury found the defendant, Ob-
dulio Santana, guilty of one count of breaking and entering a
residence during the daytime with the intent to commit a felony
and with the resulting infliction of fear upon a lawful occupant.
G. L. c. 266, § 17. On appeal he argues that the Commonwealth
failed to prove beyond a reasonable doubt that he intended to
cause fear to the occupant. For the following reasons, we conclude
that the language and purpose of the governing statute do not
require the intent, but only the result, of intimidation of an
occupant. We therefore affirm the judgment.

*Background.* The jury received the following evidence.[1]

---

[1]Five witnesses testified. One Holyoke police officer authenticated eight
photographs of the house. Another described the identification and arrest of
the defendant. One occupant of the residence, Wendy Weiss, described her

Wendy Weiss and Nicole Morgan shared a house in Holyoke. On Saturday, May 30, 2009, Weiss was repairing a wooden fence at the front of the residence. During a break in the work, the defendant rang the doorbell, introduced himself as a man who had done work in the neighborhood, and offered to complete the fence work for a small sum. She accepted the offer. By bicycle he left briefly, returned with some wood, and finished the repair.

The defendant then proposed to paint the fence. Weiss and he worked out a price for labor and his purchase of paint. On the following day, Sunday, he began the painting but reported to her that he would need to buy a thicker paint. They agreed that he would return on Monday with the right paint and perform the work. She told him that she would be at work and that the house would be locked until her return at about 6:00 P.M.

Nicole Morgan was home from work on Monday. She knew of the planned painting and from a position inside the house saw the defendant arrive by bicycle around noon. From upstairs she heard repeated knocking at the front door and ringing of the doorbell. She then heard noise at the rear sliding glass door. She went part way down the stairs and from a concealed position saw the defendant at the sliding door. He retreated from the door when her dog began to bark. A few minutes later she heard the shatter of glass, and from an upstairs window she saw the defendant ride away on the bicycle. She went downstairs and found a cellar window broken toward the rear of the house. She was now "really scared" and called Weiss at work and asked her to come home.

As Morgan was speaking on the telephone, the defendant returned. He began to paint a segment of the fence along the side of the house and then moved out of sight toward the broken cellar window. Morgan heard a thump, the crunch of glass, and footsteps in the basement. From behind a door at the top of the basement stairway, she heard the footsteps begin to mount the wooden steps. She telephoned 911 and began to speak. The footsteps stopped and receded quickly. Then, through the living

___

dealings with the defendant. The other occupant, Nicole Morgan, related her observations of him at the time of the charged breaking and entering. The defendant testified in response.

room window, she saw the defendant bicycling away from the house. By telephone she reported his appearance and direction to the police.

A short distance away, two Holyoke police officers saw and detained the defendant. En route home in her car, Weiss stopped and identified the defendant to the officers. A third officer brought Morgan to the stop scene. She also identified him.

Weiss later observed specks of paint underneath the cellar window. They matched the color of the paint used by the defendant on the fence.

In his testimony, the defendant related that he had arrived to do the agreed work on Monday morning; that he knew that Weiss had a roommate and had knocked on the front and rear doors and rung the doorbell to request some water. He had accidentally broken the cellar window as he was lifting some plywood remaining from the Saturday fence repair. He had removed the plywood from the site and then returned to resume the painting. He had left the job on the second occasion to have lunch at his brother's house. His brother was not home. As the defendant looked for his brother, the police stopped him. After Weiss and Morgan had arrived and identified him, the police had placed him under arrest.

At the close of the Commonwealth's evidence, and again at the close of all the evidence, the defendant moved for a required finding of not guilty pursuant to Mass.R.Crim.P. 25, as amended, 420 Mass. 1502 (1995). The jury's verdict and the resulting judgment of guilt entered. The defendant has pursued a timely appeal.

*Analysis.* In pertinent part, G. L. c. 266, § 17, as amended by St. 1985, c. 312, § 2, upon which the Commonwealth grounded the indictment, provides, "Whoever . . . breaks and enters in the day time, a building . . . with intent to commit a felony, the owner or any other person lawfully therein being put in fear, shall be punished . . . ." From a broad attack upon the sufficiency of the Commonwealth's evidence at trial, the defendant has narrowed his appellate challenge to the contention that the prosecution failed to prove beyond a reasonable doubt that the defendant intended to put in fear any occupant of the house. He reasons that, as a matter of fairness and caution, the criminal

law generally requires proof of a defendant's intention to commit the harm punished by a statute.

Ordinarily an attack upon the sufficiency of the evidence for a verdict would require the inquiry "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia,* 443 Mass. 307, 318-319 (1979). In this instance, however, the usual *Latimore* measurement is unnecessary. As a matter of statutory construction, the *intent* to place an occupant of a building in fear is not a prima facie element of the offense. The judge correctly instructed the jury:

> "In order to prove the defendant guilty of this offense the Commonwealth must prove each of four elements beyond a reasonable doubt. First, that the defendant broke into a building belonging to another person. Second, that the defendant entered the building. Third, that the defendant did so with the intent to commit a felony in that building.[2] And, fourth, that the owner or other person lawfully in the building was put in fear."

Several modes of statutory interpretation contradict the proposal of the intent to inflict fear upon an occupant as a fifth element.[3]

1. *Text.* We begin, as always, with the language of the act as the first source of its meaning. See *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977); *Commissioner of Correction* v. *Superior Ct. Dept. of the Trial Ct. for the County of Worcester,* 446 Mass. 123, 124 (2006). The relevant sentence structure leans heavily against the defendant's hypothesis: "Whoever

---

[2] In proper elaboration, the judge advised that "the Commonwealth has alleged that the defendant entered the residence with the intent to commit the offense of larceny in a building. I instruct you as a matter of law that larceny in a building is a felony." The fact finder may reasonably infer larcenous intent from the act of breaking and entering. See *Commonwealth* v. *Maia,* 429 Mass. 585, 587-588 (1999) (forced entry into a home at a probable work time of the occupants supports the inference); *Commonwealth* v. *McCarthy,* 37 Mass. App. Ct. 113, 115, 119 (1994) (breaking and entering a house upon the pretext of visiting friends permits the inference).

[3] The parties have not cited, and we have not found, any prior reported case framing this view of § 17.

. . . breaks and enters in the day time . . . with intent to commit a felony, the owner or other person lawfully therein being put in fear, . . . ." G. L. c. 266, § 17. If the Legislature had wished to require intent for both the commission of the felony and the fright of the occupant, it could readily have written the words "with intent to commit a felony and to put in fear the owner or other person lawfully therein."[4] It conspicuously bypassed that parallel and symmetrical phraseology for the present asymmetrical structure. The contrast appears purposeful. It supports the application of the canon that the presence of an element (intent) in one subject of a statute (wrongful entry) and its absence from a coordinate subject in the statute (infliction of fear) reflects a deliberate exclusion by the drafter. See, e.g., *Commonwealth* v. *Mitchell*, 67 Mass. App. Ct. 556, 558 (2006) ("[W]hen a [criminal] statute employs specific language in one portion, and excludes it in another, the language should not be implied where it is missing"; applying the statutory definition of armed burglary, G. L. c. 266, § 14).

2. *Authority.* Our courts will generally construe statutes so as not to derogate from common-law doctrine upon the same subject matter. "[T]he crime of breaking and entering is an ancient one, and examination of its common law roots provides guidance in discerning the meaning of the term ['entry' of a house in G. L. c. 266, § 16]. As has long been recognized, a statute should not be interpreted as being at odds with the common law 'unless

---

[4]The antecedent versions of the present statute show a legislative awareness of the separation of the element of intent from intimidation. (1) The original enactment by St. 1784, c. 66, eighth par., proscribed breaking and entering a dwelling house in the daytime "with an intent to steal or to commit any felony" without mention of the infliction of fear upon an occupant. (2) A revision by St. 1804, c. 143, § 5, punished daytime breaking and entering a dwelling house, "the owner or other person being therein and put in fear," with no reference to an element of intent. (3) By St. 1851, c. 156, § 2, the Legislature condemned the daytime breaking and entering of "any building, with intent to commit the crime of murder, rape, robbery, larceny, or any other felony, the owner or any other person lawfully therein being put in fear," language which assigned intent to the harm characterizing the four substantive crimes but not to the fright caused by the intrusion. (4) By St. 1985, c. 312, § 2, the Legislature substituted the present relevant language. At no point in the more than two centuries covered by the enactments has the Legislature linked the specific intent of the intruder to the fear of the occupant, a separation paralleling the common law of burglary. See section 2, *infra.*

the intent to alter it is clearly expressed.' " *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984), quoting from *Commonwealth* v. *Knapp*, 9 Pick. 495, 514 (1830). See 2B Singer & Singer, Sutherland Statutory Construction § 50:1 (7th ed. 2008).

The common-law offense most closely resembling the present statutory charge is burglary. By black-letter definition, its elements have consisted of (1) breaking and (2) entering (3) a dwelling, (4) during the night time, (5) with intent to commit a felony, usually larceny. 3 LaFave, Substantive Criminal Law § 21.1 (2d ed. 2003). See Smith, Criminal Practice and Procedure § 15.24 (3d ed. 2007); *Rogan* v. *Commonwealth*, 415 Mass. 376, 377 (1993). The crime has not required the intent to cause any injury to an occupant of the dwelling. See 3 Torcia, Wharton's Criminal Law § 328 (15th ed. 1995). The only intent required to "accompany the intrusion is . . . a purpose to commit a crime." American Law Institute, Model Penal Code and Commentaries § 221.1 comment 3(c), at 75 (1980). The intruder assumes the "chance" or "fortuity" of a person's presence at the time of the invasion. *Id.* at comment 3(b), at 72.[5]

3. *Purpose.* The independence of the occupant's fear from the intruder's intent rests on a readily apparent legislative choice. As a matter of cultural common sense, the law places upon the intruder the risk of the presence of an occupant and of his or her foreseeable intimidation. The statute requires the infliction of fear not as a specific intention, but only as a probable effect, of the invasion. That treatment is especially warranted in the case in which the violated building is the ultimate sanctuary of a home.

The statute does not create a crime of strict liability. Our case differs sharply from *Commonwealth* v. *Buckley*, 354 Mass. 508, 511-512 (1968) (imputing a scienter requirement to a statute exposing an accused to substantial imprisonment for presence at a location where "a narcotic drug . . . [was] illegally kept or deposited"), cited by the defendant. In that instance, no requirement of knowledge appeared in the statutory text. Here the

---

[5]The lawful occupants' "perception of alarm and danger . . . will not depend on the particular purpose of the intruder. The fact that he may be contemplating a minor offense will be no solace to those who may reasonably fear the worst and who may react with measures that may well escalate the criminal purposes of the intruder." American Law Institute, Model Penal Code and Commentaries § 221.1 comment 3(c), at 75.

statute requires the Commonwealth to prove the act of breaking and entering with the intent to commit a felony. Proof of the perpetrator's intent to commit the forbidden act will fairly subject him to liability for its incidental but serious consequence.[6]

*Judgment affirmed.*

---

[6]The defendant points out that in *Commonwealth* v. *Walden*, 380 Mass. 724, 724-725 (1980), the court stated that a jury had convicted the defendant of a double murder and "also . . . of breaking and entering a dwelling house [the victims' apartment] in the daytime with intent to commit larceny *and to put a person therein in fear*" (emphasis supplied). The appellate issues in that case concerned only the murder convictions. The breaking and entering offense received no discussion beyond the quoted glancing opening reference. In these circumstances, the language has no value as either precedent or dicta. It appears to be an inconsequential slip of the pen.